625 So.2d 1 (1992)
SEIDMAN & SEIDMAN And Binder Dijke Otte & Co., Appellants,
v.
Allan GEE, as Official Liquidator of Universal Casualty & Surety Company, Ltd. (in Liquidation), Appellee.
Nos. 91-345, 91-1479.
District Court of Appeal of Florida, Third District.
April 14, 1992.
Opinion Denying Rehearing August 17, 1993.
Holland & Knight, and Daniel S. Pearson and Lenore C. Smith, Miami, for appellants.
Anderson, Moss, Parks, Meyers & Sherouse, and Elizabeth K. Russo, Miami, for appellee.
Dennis K. Threadgill, Helen Ann Hauser, for Florida Department of Insurance, as amici curiae.
Michael R. Young, for American Institute of Certified Public Accountants, as amicus curiae.
Susan E. Martin, Michael Berry, for National Assoc. of Ins. Commissioners, as amici curiae.
Dittmar & Hauser and Helen Ann Hauser, for National Society of Ins. Receivers, as amicus curiae.
Before NESBITT, FERGUSON and LEVY, JJ.
PER CURIAM.
BDO Seidman, an accounting firm, contends, in this appeal from a $16 million adverse judgment, that it was entitled to a judgment as a matter of law in the client's action based on a theory of artificial prolongation of corporate life owing to auditing negligence, where the event that it should have, but failed to discover, was a fraud perpetrated by the corporate-client's controlling officer acting in furtherance of the corporation's purposes. We agree and reverse the judgment entered on a jury verdict.
Universal Casualty & Surety Co., Ltd., is an insurance and reinsurance company created in 1977 in the Cayman Islands. From 1978 until just prior to its liquidation in 1984, Universal was under the management and control of Vishwa Shah. In a scheme to inflate artificially the worth of the corporation, Vishwa Shah fraudulently represented that Universal was backed by a $10 million certificate of deposit. BDO Seidman, the accounting firm hired by Universal to provide audited financial reports for dissemination to prospective policy holders, negligently failed to discover that the $10 million CD was nonexistent. On the basis of Seidman's financial reports reflecting the $10 million asset, Universal obtained the licensing required for operation in the Caymans,[1] and solicited customers internationally.
*2 In 1984, Universal collapsed following a market slump. The Cayman Superintendent of Insurance suspended Universal's license and appointed Allan Gee, as liquidator, to wind up the corporation's affairs. Gee, unable to locate Universal's chief asset, the $10 million CD, concluded that its existence was a fraud perpetrated by Vishwa Shah. Gee filed a lawsuit against BDO Seidman alleging that the accounting firm was negligent in failing to discover Shah's fraud. As damages, Gee sought $16,236,969  the value of all claims made against Universal in the liquidation proceedings. The essence of Gee's claim is that Seidman's negligent audit artificially prolonged Universal's corporate life past the point of insolvency, thereby allowing Universal to incur $16 million in debt to policyholders and creditors.
As authority for its position that it should prevail on the facts of this case, appellant relies on the leading case of Cenco Inc. v. Seidman & Seidman, 686 F.2d 449 (7th Cir.1982), cert. denied, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). The central issue in Cenco was whether Seidman was entitled to use, through imputation, the fraud of Cenco's managers as a defense to an action against the corporation's auditors for failure to discover the wrongdoing of the corporation's managers. Cenco's management had fraudulently inflated the value of the corporation's inventories. Concluding that the corporation was estopped from bringing a claim against its auditors, the Cenco court held that an auditor may raise an imputation defense only where the fraud perpetrated by the management was committed on behalf of the corporation rather than in furtherance of the managers' own interests. The rationale is that the corporation is precluded from recovering on a claim for fraud where the corporation actually benefitted from the fraud. Rejecting the "extreme position" that an employee's fraud is always imputed to the corporation, the court held that the misconduct of the corporation's managers should be imputed to the corporation only where the acts are performed on behalf of the corporation.
Fraud on behalf of the corporation is not the same thing as fraud against it. Fraud against the corporation usually hurts just the corporation; the stockholders are the principal if not the only victims; their equities vis-a-vis a careless or reckless auditor are therefore strong. But the stockholders of a corporation whose officers commit fraud for the benefit of the corporation are beneficiaries of the fraud.
Cenco, 686 F.2d at 456. Because the misconduct of the managers was performed on Cenco's behalf, the corporation was barred from shifting the responsibility for the fraud to the auditors.
A similar result was reached recently in Federal Deposit Ins. Corp. v. Ernst & Young, No. Civ A. 3-90-0490-H, 60 U.S.L.W. 2235, 1991 WL 197111 (N.D.Tex. Sept. 30, 1991), which based its holding on the long-established rule that the knowledge of individuals who exercise substantial control over a corporation's affairs is imputable to the corporation. On behalf of a corporation in receivership, Western Savings Association, the FDIC, filed a lawsuit against the corporation's former auditors for negligent failure to discover the questionable lending practices of Western's chief officer. The gravamen of the FDIC's negligence claim was that if the audits had been accurate, Western would have ceased making the high-risk loans that caused it to accumulate $560 million in losses. Summary judgment was granted the defendant accounting firm on the ground that the misconduct of the managing officer was imputed to the corporation. Two key factual determinations made were (1) fraudulent transactions conducted by the managing director created an appearance of rapid growth and significant gain in the corporation's net worth, and (2) victims of the fraud were outsiders to the corporation  its depositors and creditors  whose losses, essentially, were the corporation's gains. Because the corporation had knowledge of and benefitted from the fraud, the court reasoned, it could not claim to have relied on the auditor's reports. Without proof that the corporation relied on the audit report to its detriment, the FDIC was unable to establish that the accountant's negligence caused a corporate injury.
The Ernst & Young court acknowledged, however, that an exception to the imputation *3 rule exists where an individual is acting adversely to the corporation. In that situation, the officer's knowledge and conduct are not imputed to the corporation. See also In re Investors Funding Corp., 523 F. Supp. 533 (S.D.N.Y. 1980) (knowledge of corporate agent is imputed to his principal except where the agent is acting adversely to the principal).
We, similarly, distinguish this case from Schacht v. Brown, 711 F.2d 1343 (1983), relied on by the appellee. In Schacht the liquidator of an insurance company brought suit against the officers and directors of a parent corporation who looted the insurer of its most profitable business and whose fraudulent acts caused the insurer to continue in business past the point of insolvency. The Schacht court specifically declined to apply a Cenco-type analysis writing that, "The Cenco court limited its estoppel analysis to cases where `the managers are not stealing ... but instead are turning the company into an engine of theft against outsiders.'" Schacht, 711 F.2d at 1347 (quoting Cenco, 686 F.2d at 454). By contrast, the illegal activities of the managing directors in Schacht inflicted "real damage" on the corporation by diminishing its assets and income, a result that was not beneficial to the corporation. Schacht, 711 F.2d at 1348. The wrongdoing of the directors, therefore, was not imputed to the corporation.
As in Cenco and Ernst & Young, the fraud committed by the managing director was not intended to loot the corporation, but instead was designed to turn the corporation into an "engine of theft" against outsiders  the policyholders. A Cenco estoppel is applicable. In representing that Universal was backed by a $10 million CD, Vishwa Shah was able to obtain a license to continue operating as an insurance company. Furthermore, it is undisputed that Universal solicited and successfully obtained policyholders based on the fraudulent representation that it had over $10 million in assets. It is a critical fact that Vishwa Shah's fraudulent act was committed for the benefit of the corporation.
Universal does not dispute the material facts, but argues that Shah's wrongful act was adverse to the corporation's interest because Universal eventually went into liquidation. We are not persuaded. The short-term/long-term benefit analysis was addressed in Security America Corp. v. Schacht, No. 82-C-2132, (N.D.Ill. 1983). In that case, as here, the directors of the corporation fraudulently gave an inflated account of the company's assets. That misrepresentation created a short-term benefit to the corporation because "Security America had no assets except those it acquired along the way, pursuant to the fraudulent plan." Id., slip op. at 2. In holding that as a matter of law the fraud of the directors was imputed to the corporation, the court wrote, "It is the short-term benefit or detriment to Security America that is important. Whether liability ultimately may fall on Security America, once the fraud has been unmasked, is not the relevant inquiry." Id., slip op. at 2 n. 3. Accord Cenco, 686 F.2d at 456. Similarly, the ultimate financial demise of Universal Casualty & Surety Co. was not the determining issue in the case before us. Shah's fraudulent misrepresentation benefitted Universal as it was the prerequisite to the corporation's approval to continue in business, and was integral to its marketing program.
Where it is shown, without dispute, that a corporate officer's fraud intended to and did benefit the corporation, to the detriment of outsiders, the fraud is imputed to the corporation and is an absolute defense to the corporation's action against its accounting firm for negligent failure to discover the fraud. This holding follows the equitable principle that where a prejudicial situation results from a wrongful act of a third person, the decision must be against the party whose conduct made possible the wrongful act, unless the act of the third person is fraudulent. See Gables Racing Ass'n, Inc. v. Persky, 148 Fla. 627, 6 So.2d 257 (1941).
Reversed and remanded with instructions to enter a judgment for the appellant.

ON REHEARING DENIED
BDO Seidman, an accounting firm, contends in this appeal from a $16,000,000 adverse judgment, that it was entitled to a judgment as a matter of law in the client's action based on a theory of artificial prolongation of corporated life owing to auditing negligence where the event that it should have, but failed to discover, was a fraud *4 perpetrated by the corporate client's controlling officer acting in furtherance of the corporation's purpose. The case was tried in the lower court upon the theory that the cause of action was that of the corporation. The liquidator sought, as damages, the corporation's net deficit and the trial judge so instructed the jury. In this court's opinion rendered April 14, 1992, we agreed with the accounting firm's argument and reversed the judgment entered on a jury verdict. At page 1. During the time allotted for rehearing, the liquidator moved for rehearing. Also, motions for leave to participate as amicus curiae were filed by the National Association of Insurance Commissioners, the State of Florida, Department of Insurance, and the American Institute of Certified Public Accounts.
The thrust of the argument made by the Department of Insurance is that because an insurance company liquidator does not merely stand in the shoes of a corporation but does, in effect, have "much larger shoes," representing the interests of "insureds, creditors and the public generally," the company's knowledge of the fraud perpetrated should not have been imputed to this liquidator and, accordingly, this court erred in issuing its opinion in the accounting firm's favor. However, this was never the position of the liquidator who argued rather, that the corporation was "an entity separate and distinct from its former officer" and thus, on that basis, there should be no imputation.
Reviewing the record below, at trial, the liquidator stated "the Liquidator brings only the claims of Universal itself ... and is not seeking to bring the creditors['] claims himself." (emphases in original). Also, the liquidator's position on appeal, defending its award clearly stated again: "[t]he cause of action for artificial prolongation belongs to Universal itself, and exists separate and apart from any causes of action that might be brought by creditors." Further, the liquidator stated: "[t]he fact that it is insolvent, and thus its recovery from BDO Seidman will be used to retire its debts, does not ... convert Universal's own cause of action against its accountants into a piggyback cause of action by a liquidator asserting creditors' claims." No doubt, neither error nor inadvertence led to the path chosen by the liquidator. The election made by the liquidator was thus a calculated tactic to avoid one or more obvious bars to recovery upon the theory that the action was brought on behalf of corporate creditors.
Under the foregoing, to accept the after-the-fact argument of amicus would unfairly change the theory of recovery upon which the case was tried and presented both in the trial court and before this court. Devon-Aire Villas Homeowners Ass'n, No. 4, Inc. v. Americable Assocs., Ltd., 490 So.2d 60 (Fla. 3d DCA 1985); see, e.g., Sarmiento v. State, 371 So.2d 1047 (Fla. 3d DCA 1979), approved, 397 So.2d 643 (Fla. 1981); Cartee v. Florida Dept. of Health & Rehabilitative Servs., 354 So.2d 81 (Fla. 1st DCA 1977). Consequently, we do not reject the argument advanced by the amicus; it is only that it is inapplicable in the present case.
Accordingly, appellee's motion for rehearing, as well as the motions of amicus are denied.
NOTES
[1] When Universal first began operating in 1977, there was no requirement to obtain a license to transact insurance business. The Cayman Office of Superintendent of Insurance was created in 1980, and Universal was required to obtain a license in 1981.