**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-4068
_____

D. C. Docket No. 93-1830-CV-EBD


JEFFREY H. BECK, as Trustee of Southeast Banking Corporation,

                                        Plaintiff-Appellant,

     versus


DELOITTE & TOUCHE, DELOITTE, HASKINS & SELLS, ERNEST & YOUNG, L.L.P.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(June 23, 1998)**


Before EDMONDSON and BIRCH, Circuit Judges, and FAY, Senior Circuit Judge.


BIRCH, Circuit Judge:

     In this case, we determine when the Florida statute of

limitations began to run on a malpractice action brought by the

trustee of a bankrupt corporation. The district court ruled that the bankrupt corporation's directors had been aware of the defendant-appellee's alleged malpractice, and the court imputed this knowledge to the corporation. As a result, the district court held that the corporation's malpractice action had accrued and then expired long ago. The plaintiff-appellant, however, argues that the directors' knowledge regarding the alleged malpractice should not be imputed to the corporation because the interests of the directors and the corporation were "adverse" with respect to the transaction at issue. We reverse.

## I. BACKGROUND

Plaintiff-appellant, William A. Brandt, Jr. ("the Trustee"), serves as the trustee for the Southeast Banking Corporation ("Southeast"), which the Federal Deposit Insurance Company ("FDIC") placed in receivership on September 19, 1991.[1] Defendant-appellant Deloitte

---

[1] Southeast subsequently filed for Chapter 7 bankruptcy on September 20, 1991.

& Touche ("Deloitte") is an accounting firm that has provided services to Southeast. For the purposes of this appeal, we accept the well-pleaded facts in the Trustee's complaint as true. See St. Joseph's Hosp., Inc. v. Hospital Corp. of Am., 795 F.2d 948, 954 (11th Cir. 1986).

In 1988, Southeast purchased First Federal and South Florida Savings ("First Federal") ("the acquisition"). At that time, the FDIC had already placed First Federal into receivership, reflecting First Federal's poor financial performance. According to the Trustee, Southeast's directors purchased First Federal for the sole purpose of making Southeast an unattractive target for any future takeover attempt; Southeast's directors had no belief or intention that the acquisition of First Federal might benefit Southeast in any legitimate way.

As part of the process of purchasing First Federal, Southeast hired Deloitte as its accountant for the transaction. In performing its duties, Deloitte allegedly had a choice of two accounting methods.

Under the "Purchase Method," Deloitte would have assessed First Federal's meager assets at fair market value. Because Southeast's purchase price for First Federal well exceeded the fair market value of First Federal's assets, the Trustee maintains that use of the Purchase Method would have discredited the proposed acquisition in the eyes of both Southeast's stockholders and federal regulators.[2] As a result, Deloitte's use of the Purchase Method would have prevented Southeast from acquiring First Federal.

Instead of the Purchase Method, though, Deloitte employed the "Pooling Method." Under this approach, Deloitte did not have to calculate the excess of Southeast's proposed purchase price over First Federal's fair market value. In fact, Deloitte was able to account for First Federal's assets and liabilities at historic recorded prices instead of fair market value at the time of the transaction. Further, Deloitte's use of the Pooling Method permitted it to treat

---

[2]The Trustee alleges that use of the Purchase Method would have shown Southeast to be in violation of various regulatory capital requirements.

Southeast's and First Federal's assets and liabilities as if they had always been combined. By basing its accounting on this blending of historical rather than present market data, Deloitte allegedly enabled Southeast to hide the true danger that the acquisition of First Federal posed to Southeast's financial health.

According to the Trustee's complaint, Deloitte's use of the Pooling Method constituted malpractice. After providing Southeast's directors with the results under both the Purchase and Pooling Methods, Deloitte allegedly allowed Southeast's directors to choose the method on which Deloitte ultimately based its official accounting opinion, even though Deloitte knew or should have known that use of the Pooling Method under such circumstances did not conform to Generally Accepted Accounting Principles ("GAAP"). Worse, Deloitte allegedly advised the directors to offer certain Southeast stock for sale to First Federal's depositors to create the false appearance that Southeast's planned acquisition qualified for the Pooling Method. Deloitte also allegedly allowed Southeast to use its

accounting opinion to win required regulatory approvals from the Federal Home Loan Bank Board and the Federal Savings & Loan Insurance Corporation.  Through all of these actions, Deloitte allegedly violated its duty to Southeast and committed actionable negligence.

On September 21, 1993, the Trustee sued Deloitte for professional malpractice under Florida law.  Soon thereafter, Deloitte moved to dismiss, arguing inter alia that the Trustee's suit was untimely.  Specifically, Deloitte argued that because the directors knew of Deloitte's use of the Pooling Method in 1988, the applicable two-year statute of limitations had expired in 1990.  The Trustee responded that the directors' knowledge of Deloitte's alleged negligence should not be imputed to Southeast because the interests of the directors and Southeast with regard to the acquisition had been adverse.  Thus, the Trustee contended that Southeast's malpractice action did not accrue, and therefore the statute of limitations did not begin to run, until the Trustee's

6

appointment—which occurred within two years of the Trustee's filing suit against Deloitte. On September 28, 1994, the district court ruled that the Trustee had not satisfied the adverse interest exception because he had "failed to plead" that the directors of Southeast were acting adversely to Southeast's interest. R1-31-5. For this reason, the district court dismissed the original complaint with leave to amend.

On October 12, 1994, the Trustee filed an amended complaint alleging that the directors' interest was adverse to that of the corporation. The Trustee's amended complaint was essentially identical to his original complaint, except for two added paragraphs:

> 8. From at least in or about 1985 until Southeast's failure in September 1991, the Southeast Directors acted with the improper purpose of maintaining their control over Southeast and entrenching themselves in their positions of power and influence, without consideration of whether their actions were in the best interest of Southeast or its shareholders. The utter and continuing conscious disregard by the Southeast Directors of their duties to Southeast caused a once highly successful business to fail. Accordingly, the misconduct of the Southeast Directors did not benefit Southeast in any way, but

7

instead destroyed the institution. But for the negligence of Deloitte & Touche described herein, the Southeast Directors' efforts to mask their incompetence and misdeeds would have been revealed to Southeast's regulators and shareholders, who would have taken timely action to prevent the failure of Southeast.

9. By reason of the aforesaid adverse interests of Southeast's Directors whose adverse acts were without benefit to Southeast, and, indeed were to its fatal detriment, the knowledge of Southeast's Directors regarding Deloitte & Touche's negligence is not imputed to Southeast.

R2-43 Exh. A at ¶8, ¶9. After reviewing the Trustee's amended complaint, the district court again dismissed his suit as barred by the statute of limitations, on August 15, 1995. Again, the district court ruled that "Plaintiff's allegations . . . are insufficient to meet the pleading requirement to allege adverse actions taken by Southeast directors." R3-56-6. In addition, the district court ruled that the Trustee could not, in any event, satisfy the adverse interest exception because the directors' actions in adopting Deloitte's accounting practices did not have an "entirely" adverse effect on Southeast. Although the district court recognized that "it may seem

8

clear that the directors' actions were not ultimately beneficial to Southeast," the court explained that the long-term effect of the directors' cooperation with Deloitte was "not the relevant inquiry." Id. at 7. "Because Southeast was allowed to continue in business past the point of insolvency [as a result of the Pooling Method]," the district court wrote, "the corporation benefitted to the detriment of outside creditors and stock purchasers." Id.

Finally, on September 18, 1995, the Trustee attempted to file a second amended complaint. This time, however, the district court denied the Trustee leave to amend. Because "the Trustee implicitly concedes that the alleged malpractice gave the Bank an appearance of health as the officers and directors were able to declare dividends," and because "the Trustee also implicitly concedes that the alleged malpractice benefitted the Bank by extending its life as the alleged malpractice masked the company's financial position," the district court held that any further attempt by the Trustee to draft

9

a complaint upon which the court could grant relief was futile. R5-94-4-5.

## II. DISCUSSION

In evaluating the sufficiency of a complaint, a court "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." St. Joseph's Hosp., 795 F.2d at 954. A court should not dismiss a suit on the pleadings alone "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957). In seeking dismissal for failure to state a viable claim, a defendant thus bears the "very high burden" of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief. See Jackam v. Hospital Corp. of Am. v. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986). We review the district court's decision to dismiss on the pleadings de

novo.  See McKusick v. City of Melbourne, 96 F.3d 478, 482 (11th Cir. 1996).

This appeal turns on a single issue: whether the directors' self-interest in the acquisition prevented the accrual of Southeast's malpractice action, and thus running of the statute of limitations, until the Trustee's appointment.  Under 11 U.S.C. § 108(a), a trustee of a bankrupt may bring a suit either (1) within the regularly-applicable statute of limitations or (2) within two years of the order for relief if the regularly-applicable limit did not expire before the filing of the bankruptcy petition.  Because the Trustee filed the present action two years and one day after the date of the petition, he must allege facts sufficient to satisfy Florida's two-year statute of limitations if this suit is to proceed.  See Fla. Stat. § 95.11(4)(a) (establishing a two-year limit for the filing of professional malpractice actions).  This Florida limitation period runs from "the time the cause of action is discovered or should have been discovered with the exercise of due diligence."  Id.  In normal circumstances, the knowledge of a

corporation's directors (and therefore their discovery of malpractice) is imputed to the corporation. See Seidman & Seidman v. Gee, 625 So.2d 1, 2 (Fla. Dist. Ct. App. 1992) (per curiam), review granted, 640 So. 2d 1106 (Fla. 1994), cause dismissed, 653 So. 2d 384 (Fla. 1995). Thus, Deloitte contends that the directors' knowledge of Deloitte's alleged malpractice was imputed to Southeast in 1988, and that the statute of limitations therefore expired in 1990.

The Trustee, however, argues that Southeast's cause of action against Deloitte did not accrue until his appointment because the directors' interest regarding Deloitte's use of the Pooling Method was adverse to that of Southeast. As the Florida courts have recognized, "an exception to the imputation rule exists where an individual is acting adversely to the corporation. In that situation, the officer's knowledge and conduct are not imputed to the corporation." Id. at 2-3; Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assoc., 117 F.3d 1328, 1338-39 (11th Cir. 1997) (applying Florida law); Tew v. Chase Manhattan Bank, N.A.,

728 F. Supp. 1551, 1560 (S.D. Fla. 1990) (same). The key question thus becomes: Did the Trustee allege facts that might conceivably establish that the directors' interest was adverse?

In its orders dismissing this case, the district court ruled that the Trustee could not avail himself of the adverse interest exception because Deloitte's alleged malpractice brought Southeast some short-term benefit. In so holding, the district court was correct that Florida law requires that a corporate officer's interest be entirely adverse for the exception to apply (*i.e.*, his actions must neither be intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation). See Gee, 625 So. 2d at 3. Under Florida law, the knowledge of a corporate officer whose fraud or misbehavior brings short-term gain to the corporation, or merely injures a third party, is imputed to the corporation, even if the officer's misbehavior ultimately causes the corporation's insolvency. See id. at 203; accord Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 456 (7th Cir. 1982) (relied on in Gee). Nonetheless, the district

court used the wrong baseline in its attempt to determine whether Deloitte's use of the Pooling Method conferred any benefit on Southeast. In its final order of October 11, 1996, the district court read the complaint as conceding that Deloitte's use of the Pooling Method had allowed Southeast to hide its financial distress and even to declare a dividend *after the acquisition*; these short-term benefits to Southeast, in the district court's view, precluded an adverse interest exception. The Trustee, however, alleges in his complaint that, but for Deloitte's negligence in using the Pooling method, the acquisition *would not have occurred*. Taken from this perspective, any concealment that Deloitte's actions may have allowed *only mitigated the injury that Deloitte's negligence caused Southeast*. Even assuming that the district court properly drew its inferences regarding concealment from the complaint, the Trustee has not conceded that Southeast was, in the short- or long-term, better off because of Deloitte's use of the Pooling Method *than it would have been had Deloitte employed the Purchase Method*. A director's

14

wrongful actions toward his corporation do not have to rise to the level of corporate "looting" (as in <u>Tew</u>) or embezzlement (as in <u>Golden Door</u>) in order to be adverse and thereby prevent imputation, as long as the corporation receives no benefit from the director's misbehavior. Therefore, we hold that the district court erred by ruling that the Trustee did not allege a set of facts that might conceivably entitle him to relief.

## III. CONCLUSION

To avoid imputation of the directors' knowledge of Deloitte's alleged malpractice, the Trustee must show that the directors' and Southeast's interests in Deloitte's use of the Pooling Method were adverse. Assuming that the facts that the Trustee alleges in his complaint are true, the Trustee has satisfied this burden. Therefore, we REVERSE the holding of the district court and REMAND this case for further consideration consistent with this opinion.