[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 15-13636; 15-14529
_____

D.C. Docket No. 1:14-cv-20368-KMM

HSI CHANG,
a.k.a. Mark Chang,

                                                    Plaintiff - Appellant,

versus

JPMORGAN CHASE BANK, N. A.,

                                                    Defendant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(November 8, 2016)

Before ROSENBAUM and JILL PRYOR, Circuit Judges, and UNGARO,[*] District Judge.

JILL PRYOR, Circuit Judge:

Plaintiff Hsi Chang appeals the district court's denial of his motion for reconsideration of its earlier order denying on futility grounds Chang's motion for leave to amend his complaint.  The district court denied the motion for reconsideration because, even considering the proposed allegations set forth in the motion, Chang would not be able to state a legally sufficient claim for negligence, gross negligence, or aiding and abetting fraud or conversion against Defendant JPMorgan Chase Bank, N.A. (the "Bank").  We disagree that the amendment would be futile.

Chang asserted in his motion that he had developed facts in discovery which showed that (1) a Bank employee knew that Charles Gordon, the chief executive officer of OPT Title and Escrow, Inc., had assisted Gordon in opening a bank account called an "escrow account" into which funds were to be wired by third parties with the expectation that the funds would be held in escrow by OPT Title; (2) the Bank employee knew that Gordon was stealing from the account; (3) the Bank employee assisted Gordon in committing the fraud; and (4) the Bank

---

[*] Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida, sitting by designation.

received at least a short-term financial benefit from allowing Gordon to use OPT Title's account as a vehicle for his fraud.

Although Chang was not a Bank customer, these facts, if proven, are sufficient to establish that the Bank owed Chang a duty of care and, therefore, the Bank may be held liable under negligence theories. Additionally, these facts are sufficient to state a claim for aiding and abetting fraud or conversion by the Bank because Chang plausibly claims that the Bank rendered substantial assistance to Gordon in the commission of the fraud and misappropriation. Thus, after careful consideration and with the benefit of oral argument, we hold that the district court erred in denying Chang's motion for reconsideration on the basis that even considering his new allegations set forth in his motion for reconsideration, he failed to state claims for relief. Accordingly, we reverse the district court's denial of the motion for reconsideration, reverse the judgment dismissing Chang's claims with prejudice, and remand the case for further proceedings.[1]

---

[1] After dismissing Chang's claims with prejudice, the district court awarded attorney's fees to the Bank. Because we reverse the underlying judgment, we also vacate the award of fees.

3

## I.    BACKGROUND

### A.    The Fraudulent Scheme[2]

This case arises out of a scheme in which Charles Gordon stole $750,000 from Chang.  Gordon owned and served as the chief executive officer of OPT Title, a Florida corporation, and Ziggurat (Panama), S.A., a Panamanian corporation.  Ziggurat's purported business was to secure for its clients multi-million dollar loans from global banking institutions and underwriters.  Gordon told Ziggurat's clients that because the financial institutions required proof of their liquidity to obtain financing, the clients needed to deposit a percentage of the total amount to be financed in an escrow account OPT Title maintained with the Bank.  Gordon had clients transfer the escrow funds into an account at the Bank titled "OPT Title & Escrow Inc Escrow Account" (the "OPT Escrow Account").  Instead of holding the funds in escrow, however, Gordon diverted the money to pay Ziggurat's operating expenses and his personal expenses.  Under this scheme, Gordon diverted more than $3,000,000.

In January 2010, Chang was approached by Chris Lim about advancing $750,000 to fund an escrow deposit for a Ziggurat client who was attempting to obtain financing to build a Caribbean resort.  Chang was told that if the financing

---

[2] For purposes of determining whether Chang stated a claim for relief, we accept his well-pled allegations as true and construe them in the light most favorable to Chang.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

did not close within 90 days, his deposit would be refunded.  In February 2010, Chang wired $750,000 to the OPT Escrow Account, believing OPT Title would hold the money in escrow.  But once Chang's funds were deposited in the OPT Escrow Account, Gordon immediately transferred them to another account with the Bank where they were commingled with other funds.  Believing that his money was still in the OPT Escrow Account, when the loan failed to close within 90 days, Chang agreed to extend the escrow period.

Several escrow extensions later, and more than two years after Chang initially transferred the money to the OPT Escrow Account, the Bank was asked whether OPT Title had enough money in its accounts to cover the $750,000 owed to Chang and whether there was a *lis pendens* on the OPT Escrow Account.  The Bank responded that there was no *lis pendens* on the account but failed to address whether the balance in OPT Title's accounts was sufficient to cover the amount owed to Chang.[3]

Subsequently, Gordon's fraud was uncovered.  He was indicted on a federal wire-fraud charge and pled guilty.  To date, Chang has not recovered his $750,000.

## B.    Chang's Claims Against the Bank

Chang filed this lawsuit against the Bank in federal district court based on diversity jurisdiction.  He amended his complaint once as a matter of right.  Before

---

[3] In fact, at the time of the inquiry, OPT Title's accounts with the Bank had a negative balance.

the Bank responded to Chang's First Amended Complaint, the district court entered an order setting the case for trial and requiring the parties to complete discovery 70 days prior to trial.

### 1. Chang's Proposed Second Amended Complaint

The Bank then moved to dismiss the First Amended Complaint with prejudice for failure to state a claim. Chang opposed the motion to dismiss and also filed a motion seeking leave to file a Second Amended Complaint. In the proposed Second Amended Complaint, Chang set forth additional allegations that a Bank employee had assisted Gordon in the fraud. Chang alleged that Olga Padgett-Perdomo, the Bank's vice president who prepared the paperwork to open OPT Title's accounts, permitted Gordon to name the OPT Escrow Account as an escrow account even though OPT Title had not complied with the Bank's procedures for opening an escrow account. Chang alleged that several months after opening the account, Padgett-Perdomo wrote a letter on the Bank's letterhead (the "Seven-digit Letter") representing that OPT Title's "[e]scrow account" had "deposits in a business checking and savings account in the seven digit amounts" when in fact the total balance in all OPT Title's accounts with the Bank at that time was less than $100,000. Second Am. Compl. at ¶ 35 (Doc. 29-1).[4]

---

[4] Citations to "Doc." refer to docket entries in the district court record in this case.

Chang's allegations also suggested Gordon paid off Padgett-Perdomo for supporting his fraudulent acts. Chang alleged that Gordon told an associate that he had loaned a Bank employee $100,000 and that Gordon paid Padgett-Perdomo $100,000 several months after she opened OPT Title's accounts. Gordon did not pay Padgett-Perdomo directly; instead, OPT Title transferred $100,000 from an account with the Bank to the bank account of an entity Padgett-Perdomo controlled.

In his proposed Second Amended Complaint, Chang asserted causes of action against the Bank for negligence, gross negligence, aiding and abetting fraud, and aiding and abetting conversion. The Bank opposed Chang's motion for leave to file a Second Amended Complaint, arguing that the allegations were insufficient to establish that the Bank or Padgett-Perdomo knew about the fraudulent scheme or provided substantial assistance to Gordon.

While the motions to dismiss and for leave to amend were pending, Chang zealously pursued discovery. After the parties had engaged in substantial discovery, the district court granted the Bank's motion to dismiss, dismissing the First Amended Complaint with prejudice; denied as futile Chang's motion for leave to file the proposed Second Amended Complaint; and instructed the clerk of court to close the case. As to the proposed Second Amended Complaint, the court concluded that Chang failed to state a claim for any of the causes of action because

7

his allegations were insufficient to show that the Bank or Padgett-Perdomo knew about Gordon's fraud or that they had substantially assisted the fraud. Even though the court credited Chang's allegations that Gordon illicitly loaned Padgett-Perdomo $100,000, it concluded that Chang "fail[ed] to allege any connection between the secret loan and Gordon's misappropriation, for example, an illicit *quid pro quo* arrangement whereby Gordon secretly loaned the employee money in exchange for her concealing his fraud."  *Chang v. JPMorgan Chase Bank, N.A.*, No. 14-cv-20368, 2014 WL 7564668, at *11 (S.D. Fla. Dec. 8, 2014).

### 2.    Chang's Rule 59(e) Motion and Proposed New Allegations

Chang filed a motion under Federal Rule of Civil Procedure 59(e) asking the district court to reconsider its decision and alter or amend its order dismissing his claims with prejudice and denying him leave to amend his complaint.  In his motion, Chang set forth additional allegations based on facts he learned through discovery to support his contentions that (1) Padgett-Perdomo knew that OPT Title was supposed to be holding Chang's money in escrow; (2) Padgett-Perdomo assisted Gordon in the fraudulent scheme; and (3) Gordon paid Padgett-Perdomo $100,000 in exchange for her assistance.  Below we address how Chang's new allegations support each of these inferences.

8

### a.   Allegations That Padgett-Perdomo Knew that OPT Title Agreed to Hold Chang's Money in Escrow

First, Chang's allegations support an inference that Padgett-Perdomo knew OPT Title was supposed to be holding Chang's money in escrow even before Chang transferred the money. He alleged that a week before he wired money to OPT Title, Padgett-Perdomo met with Chris Lim and William Lin, who were conducting due diligence, at her office at the Bank. At the meeting, Padgett-Perdomo assured them that OPT Title had an excellent relationship with the Bank. Lim and Lin showed Padgett-Perdomo a copy of the escrow agreement between Chang and OPT Title, which described the nature of the financing arrangement and reflected that OPT Title would be holding Chang's money in escrow. When Lim and Lin discussed that OPT Title was supposed to hold Chang's money in escrow, Padgett-Perdomo reassured them that Chang's funds would be held safely in an escrow account with the Bank.

### b.   Allegations That Padgett-Perdomo Knew about and Assisted Gordon with the Fraud

Second, Chang's more detailed allegations support an inference that Padgett-Perdomo knew about and assisted Gordon with the fraudulent scheme. He alleged that after he sent his money to the Bank, Lim and Lin spoke with Padgett-Perdomo several times on his behalf. In these conversations, Padgett-Perdomo again represented to them that Chang's money was in the OPT Escrow Account, even

9

though Gordon had immediately moved Chang's money out of the account.  An inference can be drawn from these allegations that Padgett-Perdomo lied to Lim and Lin to cover up Gordon's theft.

Chang also set forth other allegations about Padgett-Perdomo's role with respect to the OPT Escrow Account that support the conclusion that she knew about and was assisting Gordon with the fraud.  He alleged that Padgett-Perdomo, in her role as Bank vice president, prepared the paperwork to open OPT Title's and Ziggurat's accounts with the Bank.  She added the words "Escrow Account" to the name of the OPT Escrow Account, even though the account was not an authorized escrow account with the Bank.  Moreover, almost immediately after OPT Title opened its accounts at the Bank, Padgett-Perdomo provided letters vouching for OPT Title.  Just five days after opening the accounts, Padgett-Perdomo wrote a letter to a Cayman Islands bank stating that OPT Title had a banking relationship with the Bank and had "maintained excellent relationships."  Mot. to Alter or Amend at 8 (Doc. 59).  One week later, Padgett-Perdomo prepared another vouching letter on behalf of OPT Title, again affirming that OPT Title had "maintained excellent relationships."  *Id.*  Chang alleged that when Padgett-Perdomo wrote these letters, suspicious activity had already occurred in OPT Title's accounts.  For example, when OPT Title opened its accounts with the Bank, it made a single deposit into each account.  Also, in one account, OPT Title tried to

10

deposit a $1,000 check, but the deposit was rejected because the check was written on a closed account.

Chang further alleged that Padgett-Perdomo tried to keep other Bank employees from reviewing OPT Title's accounts. A Bank branch employee became suspicious about OPT Title after a potential OPT Title client brought a copy of the Seven-digit Letter to a Bank branch and requested proof that OPT Title was a stable business that was accustomed to handling large transactions. When the employee reviewed OPT Title's accounts, she saw that OPT Title's accounts had much less than $1,000,000 deposited in them and contacted Padgett-Perdomo about the accounts. Although the letter had a recent date, Padgett-Perdomo told the employee that she wrote the Seven-digit Letter "several years ago" and that OPT Title no longer kept seven digit balances with the Bank.[5] *Id.* at 11. Padgett-Perdomo also told the employee that the letter could be a forgery. She insisted that the employee allow her to handle the matter. When the Bank first investigated the Seven-digit Letter, Padgett-Perdomo stated that she had written it in 2009, but later denied writing the letter at all. Chang's allegations reflect that Padgett-Perdomo changed her story and support an inference that she originally claimed to have written the letter to keep the Bank from investigating OPT Title's accounts more closely.

---

[5] Padgett-Perdomo's claim that she wrote the letter several years ago is suspect because at that time OPT Title had only had a relationship with the Bank for just over a year.

11

### c. Allegations that Gordon Paid Off Padgett-Perdomo

Third, Chang's new allegations support an inference that Gordon paid off Padgett-Perdomo for her support in the fraudulent scheme.   According to Chang's allegations, Gordon surreptitiously paid Padgett-Perdomo $100,000.  Gordon wired $100,000 from an OPT Title account at the Bank to Infinit Management LLC, an entity controlled by Padgett-Perdomo.  One day later, Padgett-Perdomo transferred more than $90,000 from Inifinit's bank account to Colombia.  Although Padgett-Perdomo testified that Gordon loaned her the $100,000, she conceded under oath that there was no written loan agreement, Gordon and Padgett-Perdomo never agreed on repayment terms, and Padgett-Perdomo has never repaid any money to Gordon.  These allegations certainly support an inference that there was no loan.

Chang also alleged facts suggesting that Padgett-Perdomo created Infinit to surreptitiously receive money from Gordon.  She created Infinit just two months after opening OPT Title's accounts at the Bank, and Infinit never performed any services.  Although Bank policies required Padgett-Perdomo to inform the Bank about any outside business, she never told the Bank about Infinit.

The district court denied Chang's Rule 59(e) motion, determining that even considering these new allegations, Chang failed to establish that the Bank or Padgett-Perdomo knew of, or substantially assisted, Gordon's fraud and thus failed to state claims for relief.  Chang timely appealed the district court's orders granting

12

the Bank's motion to dismiss and denying his motion to amend as well as denying his motion to alter or amend the judgment.

After the district court dismissed Chang's claims with prejudice, the Bank moved to recover its attorney's fees from Chang under Florida's offer-of-judgment statute. *See* Fla. Stat. § 786.79. The district court granted the Bank's motion and awarded it $48,702.80 in attorney's fees. Chang timely appealed this order as well. Chang's consolidated appeals are now before the Court.

## II.    STANDARD OF REVIEW

We review the district court's denial of Chang's motion to alter or amend the judgment under Federal Rules of Civil Procedure 59(e) for abuse of discretion.[6] *Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006). When, as here, the plaintiff sought through a Rule 59(e) motion leave to amend his complaint and the district court denied the motion on the basis that the amendment would be futile, to determine whether the district court abused its discretion in denying the Rule 59(e) motion we must ask "whether the proposed complaint indeed failed to state a claim

---

[6] Chang has abandoned any argument that the district court erred when it concluded that his First Amended Complaint, which included no allegations about Gordon's payment to Padgett-Perdomo, failed to state a claim because he does not challenge this determination on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). And because we conclude that the district court erred when it denied Chang's Rule 59(e) motion on the basis that he had failed to state a claim for relief and instead should have permitted him to file an amended complaint, we need not address whether the district court erred in denying his motion for leave to file his Second Amended Complaint.

13

for relief." *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004).

To state a claim for relief, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In other words, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 550 U.S. at 679.

## III.   DISCUSSION

The primary issue before us is whether the district court erred in denying Chang's Rule 59(e) motion on the basis that even considering his new allegations, he failed to state a claim for relief. Because Chang set forth sufficient allegations to state a plausible claim for relief with respect to each cause of action asserted, we

14

conclude that the district court erred in denying Chang's Rule 59(e) motion and should have permitted him to amend his complaint.

## A.    Negligence Claim

We begin by reviewing the district court's conclusion that even considering the additional allegations Chang set forth in his Rule 59(e) motion, he failed to state a claim for negligence.  Under Florida law, "[t]o maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007).  To determine whether Chang stated a claim for relief, we must decide whether his allegations were sufficient to establish that the Bank owed a duty to Chang, a noncustomer.

Florida, like other jurisdictions, recognizes that as a general matter, "a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship."  *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002); *see Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 399 (7th Cir. 2004) (discussing "the many cases that refuse . . . to impose on banks a general duty of care towards persons who are not their customers and to whom therefore they have no contractual obligations"); *Sroka v. Compass Bank*, No. 2006-CA-1117, 2006 WL 2535656, at *1 (Fla. Cir. Ct. Aug 31, 2006) ("As a matter of law, a bank does not owe a duty to non-customers regarding the opening and maintenance of

15

its accounts."). But there is an exception to this rule: a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 232 (5th Cir. 2010) (applying New York law); *Atlanta & St. A.B. Ry. Co. v. Barnes*, 95 F.2d 273, 276 (5th Cir. 1938) (recognizing that a bank may be held liable for misappropriation under Florida law "when the bank knows that an actual misappropriation is intended or is in progress").[7] We conclude that Chang's allegations are sufficient to establish that the Bank owed a duty to Chang because (1) OPT Title owed a fiduciary duty to Chang; (2) the Bank, through Padgett-Perdomo, was aware of this fiduciary relationship; and (3) the Bank, through Padgett-Perdomo, knew that Gordon was misappropriating money from the account.

### 1.    Existence of a Fiduciary Relationship Between Chang and OPT Title

First, we readily conclude that Chang's additional allegations sufficiently established that OPT Title owed a fiduciary duty to Chang. Chang alleged that he and OPT Title agreed in writing that OPT Title would hold his money in escrow

---

[7] Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981, are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

and return it intact to him regardless of whether Ziggurat ultimately obtained financing for the underlying development project.  Because OPT Title held Chang's funds in escrow under that agreement, it owed Chang a fiduciary duty under Florida law.  *See Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1064 (Fla. Dist. Ct. App. 1993) ("[E]scrow holders have a fiduciary duty to exercise reasonable skill and ordinary diligence.").

### 2.    The Bank's Knowledge of the Fiduciary Relationship

Second, Chang sufficiently alleged that the Bank knew or should have known of the fiduciary relationship between OPT Title and Chang.  We can infer from Chang's allegations that the Bank, through its employee Olga Padgett-Perdomo, knew that OPT Title was acting as a fiduciary to Chang.

Chang's allegations reflect that Padgett-Perdomo knew about the fiduciary relationship even before Chang sent his money to the OPT Title Escrow account. As part of due diligence, Lim and Lin met with Padgett-Perdomo at her office at the Bank, showed her a copy of the escrow agreement between Chang and OPT Title, and told her that OPT Title would be holding Chang's money in escrow. These allegations are more than sufficient to establish that Padgett-Perdomo knew about the fiduciary relationship between Chang and OPT Title.

The Bank argues that even if Padgett-Perdomo knew about the fiduciary relationship, her knowledge should not be imputed to the Bank.  We disagree.

17

Under Florida law, knowledge an agent or employee acquires within the scope of her authority generally may be imputed to her principal or employer.  *See Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998) (recognizing that under Florida law knowledge of officer is generally imputed to corporation); *see also Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 179 (2d Cir. 2004) (recognizing that bank employee's knowledge may be imputed to bank).  However, under Florida law "an exception to the imputation rule exists where an individual is acting adversely to the corporation.  In that situation, [her] knowledge and conduct are not imputed to the corporation."  *Beck*, 144 F.3d at 736 (internal quotation marks omitted); Restatement (Third) of Agency § 5.04 (2006) (explaining that an agent's knowledge will not be imputed to the principal when "the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person").  Stated another way, an agent's knowledge will be imputed to the principal unless the agent's interest is "entirely adverse" to the principal's interest, meaning "his actions must neither be intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation."  *Beck*, 144 F.3d at 736 (citing *Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. Dist. Ct. App. 1992)).[8]  Thus, imputation is permitted when an agent's

---

[8] We acknowledge that in a decision issued before *Beck* an intermediate appellate Florida court used a different standard to determine whether an agent's knowledge should be imputed to the principal.  *See Joel Strickland Enters., Inc. v. Atl. Discount Co.*, 137 So. 2d 627, 629 (Fla.

18

actions were "designed to turn the corporation into an 'engine of theft' against outsiders," as opposed to when an agent took actions that diminished the assets of the corporation itself. *Gee*, 625 So. 2d at 3.

Accepting as true Chang's allegations, we conclude that Padgett-Perdomo's knowledge can be imputed to the Bank because her interests were not entirely adverse to the Bank's. She learned about OPT Title's fiduciary relationship while performing her job at the Bank. We acknowledge that under Chang's allegations, Padgett-Perdomo learned about the fiduciary relationship while working to further Gordon's fraudulent scheme to use the OPT Escrow Account to steal money deposited as escrow funds. Certainly, at this time Padgett-Perdomo was working to further her own and Gordon's interests. But we cannot say her interests were *entirely* adverse to the Bank's interests because her actions brought the Bank some short-term benefit. *See Beck*, 144 F.3d at 736. After all, OPT Title entered into a banking relationship with the Bank that involved very substantial deposits. In addition to the deposits, Chang alleged—and the documents attached to his First and proposed Second Amended Complaints reflect—that the Bank collected wire

---

Dist. Ct. App. 1962) (recognizing exception to imputation rule when the agent was "in reality acting in his own business or for his own personal interest and adversely to the principal" without considering whether some benefit flowed to the principal). But under our prior precedent rule, we must adhere to the formulation of the adverse interest exception recognized in *Beck* and consider whether Padgett-Perdomo's interests were entirely adverse to the Bank's. *See LeFrere v. Quezeada*, 582 F.3d 1260, 1265 (11th Cir. 2009) ("Our prior panel precedent rules applies to decisions . . . that address state law issues.").

and service fees from OPT Title.  These allegations support the inference that Padgett-Perdomo used the Bank as an engine for Gordon's scheme by allowing him to set up an escrow account to collect funds that he would then misappropriate. At least at the motion to dismiss stage, we may impute Padgett-Perdomo's knowledge to the Bank; thus, we conclude that Chang's allegations were sufficient to establish that the Bank knew that OPT Title was acting as Chang's fiduciary.

### 3.    The Bank's Knowledge of Gordon's Misappropriations

Third, Chang adequately alleged in his Rule 59(e) motion that the Bank knew Gordon was misappropriating money held in the OPT Escrow Account.  His allegations are sufficient to establish that Padgett-Perdomo knew about the misappropriation and, for the reasons set forth above, her knowledge may be imputed to the Bank.

The plausible allegations in Chang's Rule 59(e) motion support the inference that Padgett-Perdomo actually knew that Gordon was misappropriating money from the account and used her position as vice president at the Bank to assist him in carrying out the fraud.  These allegations include that Padgett-Perdomo (1) allowed OPT Title to label its account as an escrow account, even though she and OPT Title had not complied with the Bank's procedures for opening an authorized escrow account; (2) assured Lim and Lin before Chang wired money to the Bank that OPT Title would hold his money in the OPT Escrow

Account with the Bank; (3) continued to tell Lim and Lin that Chang's money was being held in the OPT Escrow Account even though Gordon had taken the money; (4) tried to prevent a Bank employee from investigating the OPT Escrow Account in connection with the Seven-digit Letter; and (5) surreptitiously received $100,000 from Gordon. Because we can infer that Padgett-Perdomo was assisting Gordon in his fraudulent scheme, we can also conclude that Padgett-Perdomo knew that Gordon was misappropriating money from the OPT Escrow Account.

The Bank argues that we cannot draw any inference that Padgett-Perdomo knew about or assisted Gordon in the fraudulent scheme based on the $100,000 payment because Gordon paid Padgett-Perdomo four months *after* he misappropriated Chang's funds. But Chang's allegations support the inference that Gordon paid Padgett-Perdomo for her ongoing assistance in and cover up of his fraudulent scheme. Chang alleged that Padgett-Perdomo assisted Gordon both before and after Chang's money was stolen. He alleged that before the theft occurred, Padgett-Perdomo labeled OPT Title's account as an escrow account and met with Lim and Lin. And Chang alleged that after the theft occurred Padgett-Perdomo repeatedly assured Lim and Lin that Chang's money was still in the OPT Escrow Account and tried to keep other Bank employees from investigating the Seven-digit Letter and the OPT Escrow Account.

21

The district court rejected Chang's allegations as insufficient because it concluded the allegations showed nothing more than that the Bank and Padgett-Perdomo engaged in routine banking services. We cannot agree. Even if Chang has no explicit allegation that Padgett-Perdomo knew about Gordon's fraud, such a direct allegation was unnecessary because Chang's allegations supported an inference that Padgett-Perdomo knew that Gordon was misappropriating money. *See Avenue CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1297 (11th Cir. 2013) (recognizing that actual knowledge may be established through inference).

Furthermore, Padgett-Perdomo's knowledge that Gordon had misappropriated the money can be imputed to the Bank. As we explained in Section III.A.2 above, under Florida law we may impute Padgett-Perdomo's knowledge to the Bank because her interests were not entirely adverse to those of the Bank, which gained some benefit from her conduct.

Although banks generally owe no duty to noncustomers, Chang's allegations as set forth in his Rule 59(e) motion were sufficient to establish that the Bank owed him a duty, and thus he stated a claim for negligence. The district court erred when it denied his Rule 59(e) motion; instead, it should have permitted him to amend his complaint.[9]

---

[9] For the same reasons, we conclude that the district court erred by refusing to allow Chang to amend his gross negligence claim. Notably, the Bank relies solely on its argument

22

## B.    Aiding and Abetting Fraud

We now turn to whether the district court erred in denying Chang's Rule 59(e) motion on the basis that he failed to state a claim for aiding and abetting fraud.  We conclude that Chang stated a claim for relief with respect to this cause of action as well.

Although no Florida court has explicitly recognized a cause of action for aiding and abetting fraud, Florida courts have assumed that the cause of action exists.  *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 371-72 (Fla. Dist. Ct. App. 2005) (explaining that aiding and abetting fraud "may well be a valid cause of action in Florida").  Florida courts have presumed that a tort claim for aiding and abetting fraud has three elements: (1) the existence of "an underlying fraud"; (2) that "[t]he defendant had knowledge of the fraud"; and (3) that the defendant "provided substantial assistance to advance the commission of the fraud." *Id.*  We have already explained above why Chang's allegations are sufficient to establish that the existence of an underlying fraud and the Bank's knowledge of the fraud.

---

about why Chang failed to state a claim for negligence to support its argument about gross negligence.

23

Regarding the third element, we conclude Chang plausibly alleged that the Bank provided substantial assistance to advance the commission of the fraud. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006) (internal quotation marks omitted). Mere inaction "constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Id.* (internal quotation marks omitted). Because "banks do have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled," a bank's inaction—that is, its failure to stop the theft of such trust funds—can constitute substantial assistance. *Id.*; *see In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (explaining that a bank's performance of ordinary business transactions for a customer "can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort" (internal quotation marks omitted)). Put another way, to establish that a bank substantially assisted a fraudulent scheme to steal trust funds, knowledge of the underlying fraud "is the crucial element." *In re First Alliance Mortg. Co.*, 471 F.3d at 995 (internal quotation marks omitted).

24

Here, Chang's allegations are sufficient to establish that the Bank provided substantial assistance through its inaction. Chang's allegations establish that the Bank (through Padgett-Perdomo) knew that OPT Title was holding the funds in escrow and also knew about Gordon's ongoing fraud. Thus, the bank had a fiduciary duty to Chang. Under these particular circumstances, the Bank's failure to warn Chang or stop Gordon's fraud is sufficient to constitute substantial assistance.[10] *See Lerner*, 459 F.3d at 295.

Considering the allegations in his Rule 59(e) motion, Chang stated a claim for aiding and abetting fraud, and the district court erred as a matter of law when it denied the Rule 59(e) motion on the basis that he failed to state a claim for relief. Instead, the district court should have granted his motion and allowed Chang to amend his complaint.[11] Because Chang stated claims for negligence, gross

---

[10] We note that Chang's allegations certainly are sufficient to establish that Padgett-Perdomo substantially assisted Gordon's fraud through her affirmative actions including adding "escrow" to the name of the OPT Escrow Account, sending vouching letters on behalf of OPT Title, misrepresenting that Chang's money was still in the OPT Escrow Account after it had been withdrawn, and trying to keep other Bank personnel from investing the OPT Escrow Account. A more difficult question is whether Padgett-Perdomo's *actions* may be imputed to the Bank such that we can say the Bank actively assisted Gordon with the fraud. After all, the imputation cases discussed above address only when an agent's *knowledge* may be imputed to her employer. *See* Section III.A.2 above. We need not answer whether Chang's allegations are sufficient to impute Padgett-Perdomo's actions to the Bank, however, because, as explained above, Chang's allegations are sufficient to establish that the Bank provided substantial assistance through its inaction.

[11] For the same reasons, we also conclude that Chang stated a claim for aiding and abetting conversion and the district court erred in denying him leave to amend. The parties implicitly concede that Chang's aiding-and-abetting-conversion claim rises or falls with his aiding-and-abetting-fraud claim.

negligence, aiding and abetting fraud, and aiding and abetting conversion, we hold that the district court abused its discretion when it denied his Rule 59(e) motion. Upon remand, the district court should permit Chang to file an amended complaint reflecting the allegations that he set forth in the motion.

## IV.    CONCLUSION

For the reasons set forth above, we reverse the district court's order denying Chang's Rule 59(e) motion to alter or amend the judgment and remand the case for further proceedings consistent with this opinion.  Because we reverse the judgment in favor of the Bank, we vacate the district court's award of attorney's fees to the Bank based on Florida's offer of judgment statute.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**