[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 15-13636; 15-14529
_____

D.C. Docket No. 1:14-cv-20368-KMM

HSI CHANG,
a.k.a. Mark Chang,

                                        Plaintiff - Appellant,

versus

JPMORGAN CHASE BANK, N. A.,

                                        Defendant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 6, 2017)

**ON PETITION FOR REHEARING**

Before ROSENBAUM and JILL PRYOR, Circuit Judges, and UNGARO,[*] District Judge.

JILL PRYOR, Circuit Judge:

Defendant JPMorgan Chase Bank, N.A. (the "Bank") moved for panel rehearing and rehearing *en banc* of an opinion originally filed on November 8, 2016. We grant the motion for panel rehearing, vacate our prior opinion, and substitute for it the following opinion.

Plaintiff Hsi Chang appeals the district court's denial of his motion for leave to file a proposed Second Amended Complaint. The district court denied the motion because the allegations set forth in the proposed Second Amended Complaint failed to state claims for negligence, gross negligence, or aiding and abetting fraud or conversion against the Bank. We disagree that the amendment would be futile.

The allegations in Chang's proposed Second Amended Complaint reflect that Olga Padgett-Perdomo, a Bank vice president, knowingly assisted Charles Gordon in stealing money that Gordon's company, OPT Title and Escrow, Inc., had agreed hold in escrow in an account with the Bank. More specifically, Chang alleged that Padgett-Perdomo (1) opened at the Bank an account for OPT Title that

---

[*] Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida, sitting by designation.

was labeled as an escrow account, even though OPT Title had not complied with the Bank's procedures for opening an escrow account; (2) wrote a letter overstating the balance in the escrow account after Gordon had stolen Chang's money from the account; and (3) surreptitiously received $100,000 from Gordon.

Although Chang was not a Bank customer, these allegations, if proven, are sufficient to establish that the Bank owed Chang a duty of care and, therefore, the Bank may be held liable under negligence theories. Additionally, these facts are sufficient to state claims against the Bank for aiding and abetting fraud and conversion because Chang plausibly claims that the Bank rendered substantial assistance to Gordon in the commission of the fraud and misappropriation. Thus, after careful consideration and with the benefit of oral argument, we hold that the district court erred in denying Chang's motion seeking leave to file the proposed Second Amended Complaint. Accordingly, we reverse the district court's denial of the motion as well as the judgment dismissing Chang's claims with prejudice, and remand the case for further proceedings.[1]

_____

[1] After dismissing Chang's claims with prejudice, the district court awarded attorney's fees to the Bank. Because we reverse the underlying judgment, we also vacate the award of fees.

## I.    BACKGROUND

### A.    The Fraudulent Scheme[2]

This case arises out of a scheme in which Charles Gordon stole $750,000 from Chang.  Gordon owned and served as the chief executive officer of OPT Title, a Florida corporation, and Ziggurat (Panama), S.A., a Panamanian corporation.  Ziggurat's purported business was to secure for its clients multi-million dollar loans from global banking institutions and underwriters.  Gordon told Ziggurat's clients that because the financial institutions required proof of their liquidity to obtain financing, the clients needed to deposit a percentage of the total amount to be financed in an escrow account OPT Title maintained with the Bank.  Gordon had clients transfer the escrow funds into an account at the Bank titled "OPT Title & Escrow Inc Escrow Account" (the "OPT Escrow Account").  Instead of holding the funds in escrow, however, Gordon diverted the money to pay Ziggurat's operating expenses and his personal expenses.  Under this scheme, Gordon diverted more than $3,000,000.

In January 2010, Chang was approached about advancing $750,000 to fund an escrow deposit for a Ziggurat client who was attempting to obtain financing to

---

[2] For purposes of determining whether Chang stated a claim for relief in his proposed Second Amended Complaint, we accept his well-pled allegations as true and construe them in the light most favorable to Chang.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

build a Caribbean resort.  Chang was told that if the financing did not close within 90 days, his deposit would be refunded.  In February 2010, Chang wired $750,000 to the OPT Escrow Account, believing OPT Title would hold the money in escrow.  But once Chang's money was deposited in the OPT Escrow Account, Gordon immediately transferred it to another account with the Bank where it was commingled with other funds and stolen.  Believing that his money was still in the OPT Escrow Account, when the loan failed to close within 90 days, Chang agreed to extend the escrow period.

Subsequently, Gordon's fraud was uncovered.  He was indicted on a federal wire-fraud charge and pled guilty.  To date, Chang has not recovered his $750,000.

## B.    Chang's Claims Against the Bank

Chang filed this lawsuit against the Bank in federal district court based on diversity jurisdiction.  He amended his complaint once as a matter of right.  Before the Bank responded to Chang's First Amended Complaint, the district court entered an order setting the case for trial and requiring the parties to complete discovery 70 days prior to trial.

The Bank then moved to dismiss the First Amended Complaint with prejudice for failure to state a claim. Chang opposed the motion to dismiss and also filed a motion seeking leave to file a Second Amended Complaint.  In the proposed Second Amended Complaint, Chang alleged that Padgett-Perdomo assisted Gordon

5

in carrying out his scheme. Chang alleged that she prepared the paperwork to open OPT Title's accounts and permitted Gordon to name the OPT Escrow Account as an escrow account even though OPT Title had not complied with the Bank's procedures for opening an escrow account. He also alleged that Padgett-Perdomo wrote a letter on Bank letterhead representing that OPT Title's "[e]scrow account" had "deposits in a business checking and savings account in the seven digit amounts" when in fact the total balance in all OPT Title's accounts with the Bank was less than $100,000 (the "Seven-digit Letter"). Second Am. Compl. at ¶ 35 (Doc. 29-1).[3] In exchange, Chang alleged, Gordon paid $100,000 to an entity Padgett-Perdomo controlled several months after she opened OPT Title's accounts.

In his proposed Second Amended Complaint, Chang asserted causes of action against the Bank for negligence, gross negligence, aiding and abetting fraud, and aiding and abetting conversion. The Bank opposed Chang's motion for leave to file a Second Amended Complaint, arguing that the allegations were insufficient to establish that the Bank or Padgett-Perdomo knew about the fraudulent scheme or provided substantial assistance to Gordon.

The district court granted the Bank's motion to dismiss, dismissed the First Amended Complaint with prejudice, denied as futile Chang's motion for leave to file the proposed Second Amended Complaint, and instructed the clerk of court to

---

[3] Citations to "Doc." refer to docket entries in the district court record in this case.

close the case.  As to the proposed Second Amended Complaint, the court

concluded that Chang failed to state a claim for any of the causes of action because

his allegations were insufficient to show that the Bank or Padgett-Perdomo knew

about Gordon's fraud or that they had substantially assisted the fraud.  Even

though the court credited Chang's allegations that Gordon illicitly loaned Padgett-

Perdomo $100,000, it concluded that Chang "fail[ed] to allege any connection

between the secret loan and Gordon's misappropriation, for example, an illicit *quid*

*pro quo* arrangement whereby Gordon secretly loaned the employee money in

exchange for her concealing his fraud."  *Chang v. JPMorgan Chase Bank, N.A.*,

No. 14-cv-20368, 2014 WL 7564668, at *11 (S.D. Fla. Dec. 8, 2014).  Chang

timely appealed the district court's order granting the Bank's motion to dismiss

and denying his motion to amend.[4]

After the district court dismissed Chang's claims with prejudice, the Bank

moved to recover its attorney's fees from Chang under Florida's offer-of-judgment

statute.  *See* Fla. Stat. § 768.79.  The district court granted the Bank's motion and

---

[4] After the district court dismissed the complaint, Chang filed a motion under Federal Rule of Civil Procedure 59(e) asking the district court to alter or amend its order dismissing his claims with prejudice and denying him leave to amend his complaint.  The district court denied Chang's motion, concluding that even considering the new allegations Chang set forth in his Rule 59(e) motion, he failed to establish that the Bank or Padgett-Perdomo knew of, or substantially assisted, Gordon's fraud and thus failed to state claims for relief.  Chang timely appealed the denial of his motion to alter or amend the judgment.  Because we conclude that the district court erred in denying his motion for leave to amend, we need not address whether the district court erred in denying the Rule 59(e) motion.

awarded it $48,702.80 in attorney's fees.  Chang timely appealed this order as well.

Chang's consolidated appeals are now before the Court.

## II.    STANDARD OF REVIEW

We review a district court's denial of a motion to amend a complaint for

abuse of discretion.[5]  *See Harris v. Ivax Corp.*, 182 F.3d 799, 802-03 (11th Cir.

1999).  But we review *de novo* "the underlying legal conclusion of whether a

particular amendment to the complaint would be futile."  *Id.*  Under the Federal

Rules of Civil Procedure, a district court "should freely give leave" to amend a

complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But "a district

court may properly deny leave to amend the complaint under Rule 15(a) when such

amendment would be futile," such as "when the complaint as amended is still

subject to dismissal" because, for example, it fails to state a claim for relief.  *Hall*

*v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (internal

quotation marks omitted).

To state a claim for relief, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A

---

[5] Chang has abandoned any argument that the district court erred when it concluded that his First Amended Complaint, which included no allegations about Gordon's payment to Padgett-Perdomo, failed to state a claim because he does not challenge this determination on appeal.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In other words, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 550 U.S. at 679.

### III.    DISCUSSION

The primary issue before us is whether the district court erred in denying Chang leave to file the proposed Second Amended Complaint on the ground that the amendment was futile because Chang failed to state a claim. Because Chang's proposed Second Amended Complaint stated plausible claims for relief with respect to each cause of action asserted, we conclude that the district court erred in denying Chang leave to amend.

### A.    The Negligence Claim

We begin by reviewing the district court's conclusion that Chang's proposed Second Amended Complaint failed to state a claim for negligence. Under Florida law, "[t]o maintain an action for negligence, a plaintiff must establish that the

defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007). To determine whether Chang stated a claim for relief, we must decide whether his allegations were sufficient to establish that the Bank owed a duty to Chang, a noncustomer.

Florida, like other jurisdictions, recognizes that as a general matter, "a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship." *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002); *see Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 399 (7th Cir. 2004) (discussing "the many cases that refuse . . . to impose on banks a general duty of care toward persons who are not their customers and to whom therefore they have no contractual obligations"); *Sroka v. Compass Bank*, No. 2006-CA-1117, 2006 WL 2535656, at *1 (Fla. Cir. Ct. Aug 31, 2006) ("As a matter of law, a bank does not owe a duty to non-customers regarding the opening and maintenance of its accounts."). But there is an exception to this rule: a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 232 (5th Cir. 2010) (applying New York law); *Atlanta & St. A.B. Ry. Co. v.*

10

*Barnes*, 95 F.2d 273, 276 (5th Cir. 1938) (recognizing that a bank may be held liable for misappropriation under Florida law "when the bank knows that an actual misappropriation is intended or is in progress").[6]  We conclude that the Bank owed Chang a duty because his allegations are sufficient to establish (1) OPT Title owed Chang a fiduciary duty; (2) the Bank, through Padgett-Perdomo, was aware of this fiduciary relationship; and (3) the Bank, through Padgett-Perdomo, knew that Gordon was misappropriating money from the escrow account.

### 1.    Existence of a Fiduciary Relationship Between Chang and OPT Title

First, the allegations in Chang's proposed Second Amended Complaint sufficiently established that OPT Title owed him a fiduciary duty.  Chang alleged that OPT Title agreed to hold his money in escrow and return it intact to him regardless of whether Ziggurat ultimately obtained financing for the underlying development project.  Because OPT Title held Chang's funds in escrow under that agreement, it owed him a fiduciary duty under Florida law.  *See Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1064 (Fla. Dist. Ct. App. 1993) ("[E]scrow holders have a fiduciary duty to exercise reasonable skill and ordinary diligence.").

---

[6] Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981, are binding on this Court.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

11

## 2.    The Bank's Knowledge of the Fiduciary Relationship

Second, Chang sufficiently alleged that the Bank knew or should have known of the fiduciary relationship between OPT Title and Chang. We can infer from Chang's allegations that the Bank, through its employee Olga Padgett-Perdomo, knew that OPT Title was acting as a fiduciary to Chang.

Accepting Chang's allegations as true, they support the conclusion that Padgett-Perdomo knew OPT Title owed a fiduciary duty to those, like Chang, who deposited money in the OPT Escrow Account. Because Chang alleged that Padgett-Perdomo permitted the OPT Title account to be labeled an "escrow account," we can infer that she knew or should have known OPT Title was supposed to hold money deposited in that account in escrow and thus that OPT Title owed a fiduciary duty to those who sent the escrow money.

The Bank argues that even if Padgett-Perdomo knew about the fiduciary relationship, her knowledge should not be imputed to the Bank. We disagree. Under Florida law, knowledge an agent or employee acquires within the scope of her authority generally may be imputed to her principal or employer. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998) (recognizing that under Florida law knowledge of officer is generally imputed to corporation); *see also Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 179 (2d Cir. 2004) (recognizing that bank employee's knowledge may be imputed to bank). However,

12

under Florida law "an exception to the imputation rule exists where an individual is acting adversely to the corporation.  In that situation, [her] knowledge and conduct are not imputed to the corporation."  *Beck*, 144 F.3d at 736 (internal quotation marks omitted); Restatement (Third) of Agency § 5.04 (2006) (explaining that an agent's knowledge will not be imputed to the principal when "the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person").  Stated another way, an agent's knowledge will be imputed to the principal unless the agent's interest is "entirely adverse" to the principal's interest, meaning the "actions must neither be intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation."  *Beck*, 144 F.3d at 736 (citing *Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. Dist. Ct. App. 1992)).[7]  Thus, imputation is permitted when an agent's actions were "designed to turn the corporation into an 'engine of theft' against outsiders," as opposed to when an agent took actions that diminished the assets of the corporation itself.  *Gee*, 625 So. 2d at 3.

---

[7] We acknowledge that in a decision issued before *Beck* an intermediate appellate Florida court used a different standard to determine whether an agent's knowledge should be imputed to the principal.  *See Joel Strickland Enters., Inc. v. Atl. Discount Co.*, 137 So. 2d 627, 629 (Fla. Dist. Ct. App. 1962) (recognizing exception to imputation rule when the agent was "in reality acting in his own business or for his own personal interest and adversely to the principal" without considering whether some benefit flowed to the principal).  But under our prior precedent rule, we must adhere to the formulation of the adverse interest exception recognized in *Beck* and consider whether Padgett-Perdomo's interests were entirely adverse to the Bank's.  *See LeFrere v. Quezeada*, 582 F.3d 1260, 1265 (11th Cir. 2009) ("Our prior panel precedent rules applies to decisions . . . that address state law issues.").

13

Accepting as true Chang's allegations, we conclude that Padgett-Perdomo's knowledge can be imputed to the Bank because her interests were not entirely adverse to the Bank's. She learned about OPT Title's fiduciary relationship while performing her job at the Bank. We acknowledge that under Chang's allegations, Padgett-Perdomo learned about the fiduciary relationship while working to further Gordon's fraudulent scheme to use the OPT Escrow Account to steal money deposited as escrow funds. Certainly, at this time Padgett-Perdomo was working to further her own and Gordon's interests. But we cannot say her interests were *entirely* adverse to the Bank's interests because her actions brought the Bank some short-term benefit. *See Beck*, 144 F.3d at 736. After all, OPT Title entered into a banking relationship with the Bank that involved very substantial deposits. In addition to the deposits, Chang alleged—and the documents attached to the proposed Second Amended Complaints reflect—that the Bank collected wire and service fees from OPT Title. These allegations support the inference that Gordon used the Bank as an engine for his theft by using the escrow account to collect funds that he then misappropriated. At least at the motion to dismiss stage, we may impute Padgett-Perdomo's knowledge to the Bank; thus, we conclude that Chang's allegations were sufficient to establish that the Bank knew that OPT Title was acting as Chang's fiduciary.

14

### 3.    The Bank's Knowledge of Gordon's Misappropriations

Third, Chang adequately alleged in his proposed Second Amended Complaint that the Bank knew Gordon was misappropriating money held in the OPT Escrow Account.  We can infer from Chang's allegations that Padgett-Perdomo knew about and assisted in Gordon's scheme to steal the escrow money.  More specifically, Chang alleged that Padgett-Perdomo labeled OPT Title's account as an escrow account even though OPT Title had failed to comply with the Bank's procedures for opening escrow accounts, falsely represented the balance in the OPT Escrow Account in the Seven-digit Letter, and secretly received $100,000 from Gordon paid to an entity she controlled.

The Bank argues that we cannot infer that Padgett-Perdomo knew about Gordon's fraudulent scheme from the $100,000 payment because Gordon paid Padgett-Perdomo four months *after* he misappropriated Chang's funds.  But Chang's allegations support the inference that Gordon paid Padgett-Perdomo for her ongoing assistance in and cover up of his fraudulent scheme.  Chang alleged that Padgett-Perdomo assisted Gordon both before and after Chang's money was stolen.  He alleged that before the theft occurred, Padgett-Perdomo assisted Gordon by allowing him to name the account an escrow account.  And Chang alleged that after the theft occurred Padgett-Perdomo authored the Seven-digit Letter misrepresenting and overstating the balance in the OPT Escrow Account.

15

The district court rejected Chang's allegations as insufficient because it concluded the allegations showed nothing more than that the Bank and Padgett-Perdomo engaged in routine banking services. We cannot agree. Even if Chang has no explicit allegation that Padgett-Perdomo knew about Gordon's fraud, such a direct allegation was unnecessary because Chang's allegations support an inference that Padgett-Perdomo knew that Gordon was misappropriating money. *See Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1297 (11th Cir. 2013) (recognizing that actual knowledge may be established through inference).

Furthermore, Padgett-Perdomo's knowledge that Gordon had misappropriated the money can be imputed to the Bank. As we explained in Section III.A.2 above, under Florida law we may impute Padgett-Perdomo's knowledge to the Bank because her interests were not entirely adverse to those of the Bank, which gained some benefit from her conduct.

Although banks generally owe no duty to noncustomers, Chang's allegations as set forth in his proposed amended complaint were sufficient to establish that the Bank owed him a duty, and thus he stated a claim for negligence. The district court erred when it denied him leave to amend.[8]

---

[8] For the same reasons, we conclude that the district court erred by refusing to allow Chang to amend his gross negligence claim. Notably, the Bank relies solely on its argument about why Chang failed to state a claim for negligence to support its argument about gross negligence.

16

**B.    The Aiding and Abetting Fraud Claim**

We now turn to whether the district court erred in denying Chang's motion for leave to amend on the basis that he failed in his proposed amended complaint to state a claim for aiding and abetting fraud. We conclude that Chang stated a claim for relief with respect to this cause of action as well.

Although no Florida court has explicitly recognized a cause of action for aiding and abetting fraud, Florida courts have assumed that the cause of action exists. *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 371-72 (Fla. Dist. Ct. App. 2005) (explaining that aiding and abetting fraud "may well be a valid cause of action in Florida"). Florida courts have presumed that a tort claim for aiding and abetting fraud has three elements: (1) the existence of "an underlying fraud"; (2) that "[t]he defendant had knowledge of the fraud"; and (3) that "[t]he defendant provided substantial assistance to advance the commission of the fraud." *Id.* at 372. We have already explained above why Chang's allegations are sufficient to establish that the existence of an underlying fraud and the Bank's knowledge of the fraud.

Regarding the third element, we conclude Chang plausibly alleged that the Bank provided substantial assistance to advance the commission of the fraud. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to

17

occur." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006) (internal quotation marks omitted). Mere inaction "constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Id.* (internal quotation marks omitted). Because "banks do have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled," a bank's inaction—that is, its failure to stop the theft of such trust funds—can constitute substantial assistance. *Id.*; *see In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (explaining that a bank's performance of ordinary business transactions for a customer "can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort" (internal quotation marks omitted)). Put another way, to establish that a bank substantially assisted a fraudulent scheme to steal trust funds, knowledge of the underlying fraud "is the crucial element." *In re First Alliance Mortg. Co.*, 471 F.3d at 995 (internal quotation marks omitted).

Here, Chang's allegations are sufficient to establish that the Bank provided substantial assistance through its inaction. Chang's allegations establish that the Bank (through Padgett-Perdomo) knew that OPT Title was holding the funds in escrow and about Gordon's ongoing fraud. Thus, the bank owed a fiduciary duty to Chang. Under these particular circumstances, the Bank's failure to warn Chang

18

or stop Gordon's fraud is sufficient to constitute substantial assistance.[9]  *See*

*Lerner*, 459 F.3d at 295.

Considering the allegations in the proposed Second Amended Complaint,

Chang stated a claim for aiding and abetting fraud, and the district court erred

when it concluded that the amendment would have been futile.[10]  Because Chang

stated claims for negligence, gross negligence, aiding and abetting fraud, and

aiding and abetting conversion, we hold that the district court erred when it refused

to allow him to amend his complaint.  Upon remand, the district court should

permit Chang to file his proposed Second Amended Complaint.

## IV.   CONCLUSION

For the reasons set forth above, we reverse the district court's order denying

Chang's motion seeking leave to amend and remand the case for further

proceedings consistent with this opinion.  Because we reverse the judgment in

---

[9] We note that Chang's allegations certainly are sufficient to establish that Padgett-Perdomo substantially assisted Gordon's fraud through her affirmative actions including adding "escrow" to the name of the OPT Escrow Account and authoring the Seven-digit Letter as well as her receipt of $100,000 from Gordon.  A more difficult question is whether Padgett-Perdomo's *actions* may be imputed to the Bank such that we can say the Bank actively assisted Gordon with the fraud.  After all, the imputation cases discussed above address only when an agent's *knowledge* may be imputed to her employer.  *See* Section III.A.2 above.  We need not answer whether Chang's allegations are sufficient to impute Padgett-Perdomo's actions to the Bank, however, because, as explained above, Chang's allegations are sufficient to establish that the Bank provided substantial assistance through its inaction.

[10] For the same reasons, we also conclude that Chang stated a claim for aiding and abetting conversion and the district court erred in denying him leave to amend.  The parties implicitly concede that Chang's aiding-and-abetting-conversion claim rises or falls with his aiding-and-abetting-fraud claim.

favor of the Bank, we vacate the district court's award of attorney's fees to the Bank based on Florida's offer of judgment statute.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**