[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

Nos. 16-10181 & 16-10841
Non-Argument Calendar

————————————————

D.C. Docket No. 1:15-cr-20096-RNS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAURA BARBOSA LOPES,

Defendant-Appellant.

————————————————

Appeals from the United States District Court
for the Southern District of Florida

————————————————

(August 23, 2017)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Maura Barbosa Lopes appeals her sentence of 135 months of imprisonment, following her pleas of guilty to one count of conspiring to commit bank fraud, 18 U.S.C. § 1349, and eight counts of bank fraud, *id.* § 1344. Lopez challenges the enhancements of her sentence for abuse of trust and for the amount of loss; the substantive reasonableness of her sentence; and the amount of restitution. We affirm.

The district court did not clearly err by increasing Lopes's base offense level for abuse of trust. A defendant who commits fraud is subject to a two-level enhancement for abuse of trust if "the victim placed a special trust in the defendant beyond ordinary reliance on [her] integrity and honesty," *United States v. Williams*, 527 F.3d 1235, 1250–51 (11th Cir. 2008), that she then exploited to perpetrate or conceal her fraud, *United States v. Hall*, 349 F.3d 1320, 1324–25 (11th Cir. 2003). The defrauded banks trusted Lopes, as the manager of a closing company, Title Closing Partners of Brickell, LLC, to provide reliable information about borrowers and to ensure that the funds loaned for real estate transactions were dispersed to purchase property and to satisfy closing expenses. *See* United States Sentencing Guidelines Manual § 3B1.3 cmt. n.1 ("a position of . . . trust [is often] characterized by . . . substantial discretionary judgment that is ordinarily given considerable deference"); *see also Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1095 (11th Cir. 2017) (recognizing that a fiduciary relationship

2

exists under Florida law between a company that holds funds in escrow and the supplier of those funds). Lopes abused her position of trust by submitting fraudulent closing documents, by falsely informing the banks that purchasers had supplied a down payment or earnest money, by prematurely disbursing loan funds to putative borrowers, and by misappropriating loan funds for herself and her coconspirators.

The district court also did not clearly err in finding that Lopes was responsible for a loss between $9.5 and $25 million. Lopes does not dispute that she is responsible for outstanding principal loan amounts of $8,733,602. Lopes contests being held responsible for an additional $1,244,281.21, $776,932 of which the banks incurred in out-of-pocket costs and $467,349.27 of which the banks paid for broker's fees. But the government submitted testimony and detailed records establishing that the banks incurred $776,932 in expenses to foreclose on and to dispose of the properties connected to the fraudulent loans. Additionally, Lopes accepted the proffer of the government that the original loan documents proved that the banks incurred a separate expense of $467,349.27 in broker's fees. The district court correctly increased Lopes's base offense level by 20 levels for causing a loss of more than $9.5 million and less than $25 million. *See* U.S.S.G. § 2B1.1(b)(1)(K).

The district court did not abuse its discretion when it sentenced Lopes to the

3

low end of her advisory guideline range. Lopes conspired to defraud banks by using entities she and her coconspirators owned or controlled to fraudulently obtain mortgage loans. As the manager of Title Closing, Lopes submitted false settlement statements to lenders, and she and her family profited from funds misappropriated from escrow accounts. Lopes also submitted a mortgage application falsely stating that specific property was her primary residence; that she was employed by a coconspirator's company, Cellular & Wireless Wholesale Corporation; that she had a monthly gross income of $55,000; and that she had accounts at Wachovia Bank containing $117,553 and $355,123. Lopes altered her bank account statements to reflect the amounts listed on her fraudulent application, and she obtained prematurely $565,843 in loan funds to purchase a cashier's check to create the illusion of paying that amount when closing on the mortgage. The district court granted Lopes's motion to reduce the enhancement for her aggravating role from four to three levels, *see* U.S.S.G. § 3B1.1(a), (b), which resulted in a revised sentencing range of 135 to 168 months of imprisonment. The district court considered imposing a sentence at the high end of Lopes's sentencing range because of her substantial role in the conspiracy and the significant harm it caused to the lending institutions and homeowners whose properties were devalued as a result. Even so, the district court reasonably determined that a sentence of 135 months would punish Lopes's wrongdoing yet account for her alleged

4

susceptibility to being manipulated by her husband, coconspirator Raul Quintana. *See* 18 U.S.C. § 3553. Lopes's sentence is reasonable.

Lopes argues about a disparity between her sentence and that imposed on Quintana, but they are not similarly situated. *See United States v. Spoerke*, 568 F.3d 1236, 1252 (11th Cir. 2009). The district court varied downward from Quintana's sentencing range based on his "mitigating" personal characteristics. Unlike Lopes, Quintana served as a Navy Seal and, as the district court stated, he "made significant efforts to try and sustain the mortgages and didn't just walk away when the market collapsed."

The district court did not clearly err by finding that Lopes was jointly responsible for $8,437,863 in restitution. The government submitted statements from Chase Bank that showed a net principal loss and additional expenses totaling $282,782 for two fraudulent loans. The government also submitted a statement of loans originated by Washington Mutual, which the Federal Deposit Insurance Corporation assumed, that detailed for each loan the net principal loss, amortized interest, and additional expenses that totaled $8,155,081. Using these documents, the government established, by a preponderance of the evidence, the losses incurred by the financial institutions. *See* 18 U.S.C. §§ 3663A(c), 3664(e), (f).

Lopes contends that the amount of restitution should not exceed $6,250,000, but she has abandoned the argument by failing to cite any parts of the record

5

relevant to her argument or to provide any substantive discussion supporting her position. *See* Fed. R. App. P. 28(a)(8)(A). Lopes also cannot rely on the arguments that her attorney raised before the district court without explaining how the district court erred. *See United States v. Moran*, 778 F.3d 942, 985 (11th Cir. 2015).

We **AFFIRM** Lopes's sentence.