[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11391
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-00112-SCJ

TIM SUNDY,

                                                        Plaintiff-Appellant,

versus

FRIENDSHIP PAVILION ACQUISITION
COMPANY, LLC,
GARY PICONE,
THOMAS LING,
MICHAEL WEINSTEIN,
ARSENAL REAL ESTATE FUND II-IDF,
L.P.,
GEORGIA DEPARTMENT OF
TRANSPORTATION,
et al.,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 13, 2020)

Before NEWSOM, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

Tim Sundy, proceeding *pro se*, appeals the dismissal of his complaint brought under 42 U.S.C. §§ 1983 and 1985 for alleged violations of his constitutional rights. His suit arises out of a lease and road-construction dispute in state court in 2015, and Sundy's subsequent state-court action against various parties and state-court judges involved in the litigation (some of which were removed to federal court). While the state-court action was pending, Sundy filed the present suit in federal court naming various individuals and entities as defendants, including (as relevant here): (1) employees in the Hall County clerk's office (collectively, the clerk defendants); (2) Christopher Carr, Georgia's Attorney General (Carr); and (3) Friendship Pavilion Acquisition Company, LLC, the Arsenal Real Estate Fund II-IDF, L.P., Gary Picone, Thomas Ling, and Michael Weinstein (collectively, the Friendship defendants).[1]

Liberally construing his briefs, Sundy first asserts on appeal (a) that the district court erred in dismissing his claims against Carr and the clerk defendants

---

[1] Sundy also named various other parties as defendants, but he abandoned his claims against them by failing to challenge in his initial brief all or part of the bases for dismissal cited by the district court. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) (explaining that if an appellant does not appropriately challenge in an initial brief one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge to that ground, and the district court's judgment should be affirmed).

2

based on the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971), because, he says, his due process and equal protection claims were not presented to the state court and are "independent" of the state-court proceedings,[2] and (b) that the district court erred in not allowing him to amend his complaint.  Second, he argues that the district court erred (a) by dismissing the claim against Friendship as nonjusticiable because his requested declaratory relief would not redress his alleged injuries, and (b) by granting Friendship's motion to set aside entry of default even though it did not "present[] a meritorious defense."  Finally, he argues that the removal of documents from the district court's docket, a delay in fixing clerical mistakes, and a "secret" *ex parte* hearing by the court to find the missing documents violated his right to due process to be fully heard upon a complete record, "depriv[ed] [him] of his right to avoid cross-examine," and "nullif[ied] the confrontation clause of the 6th Amendment."[3]  We will address each contention in turn.

---

[2] Sundy's claims are difficult to discern.  At times, he seems to contend that various state-court employees engaged in a conspiracy against him—including by removing papers from the docket and conducting hearings without him.  At other times, he simply (and even more vaguely) asserts that his due process, equal protection, and access-to-courts rights were violated.

[3] Sundy also argues that the district court erred in denying his motion to proceed *in forma pauperis* (IFP) as frivolous; however, this is not a final, appealable order.  *See* 28 U.S.C. § 1291.  We note that the proper procedure for challenging the district court's decision was through a motion to proceed IFP in this Court, which we denied because his appeal was frivolous.  Moreover, because he paid the requisite filing fee, any issue in this respect is moot.  Therefore, we dismiss his appeal with respect to this issue.

3

**I**

Sundy first argues (a) that the district court erred in dismissing his claims against Carr and the clerk defendants based on the *Younger* abstention doctrine and (b) that the district court erred in not allowing him to amend his complaint.[4]

**A**

In *Younger*, the Supreme Court held that a federal district court may not enjoin a pending criminal state-court proceeding except under extraordinary circumstances. *Green v. Jefferson Cty. Comm'n*, 563 F.3d 1243, 1250 (11th Cir. 2009); *see also Younger*, 401 U.S. 37. The Supreme Court has since expanded the *Younger* doctrine to include, as relevant here, civil proceedings that "implicate state courts important interests in administering certain aspects of their judicial systems." *Green*, 563 F.3d at 1250–51 (quotation omitted). Especially as applied to civil cases, the *Younger* abstention doctrine is "an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id.* at 1251 (quotation omitted). As such, the doctrine "only applies where the state proceeding at issue involves orders that are

---

[4] "We review *de novo* the district court's grant of a motion to dismiss," *Timson*, 518 F.3d at 872, but review a district court's decision to abstain on *Younger* grounds for an abuse of discretion, *Wexler v. Lepore*, 385 F.3d 1336, 1338 (11th Cir. 2004). "[W]e review *de novo* the underlying legal conclusion of whether a particular amendment to the complaint would be futile. *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1093–1094 (11th Cir. 2017) (quotation omitted).

uniquely in furtherance of the state courts' ability to perform their *judicial* functions."  *Id.* (quotation omitted).

For *Younger* abstention to apply, certain factors must be met—(1) the state judicial proceedings must be ongoing, (2) the proceedings must "implicate important state interests," and (3) the federal plaintiff must have had "an adequate opportunity" to raise constitutional challenges in the state proceedings.  *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1274–75 (11th Cir. 2003) (quotation omitted); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  The first factor is met when a state proceeding is ongoing and the relief that plaintiff seeks would interfere with it.  *31 Foster Children*, 329 F.3d at 1276.  As for the second factor, the Supreme Court has repeatedly recognized that states "have important interests in administering certain aspects of their judicial systems."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12–13 (1987). With respect to the third factor, "plaintiffs have the burden of establishing that the state proceedings do not provide an adequate remedy for their federal claims."  *31 Foster Children*, 329 F.3d at 1279.  "A federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  *Id.* (quotation omitted).  "The relevant question is not whether the state courts can do all that Plaintiffs wish they could, but whether the available remedies are . . . adequate.  *Id.* (alteration omitted) (quotation omitted).

5

*Younger* abstention applies to claims for injunctive relief as well as claims for declaratory relief "that would effectively enjoin state proceedings." *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261, 1263–64 (11th Cir. 1997). Additionally, *Younger* abstention may apply to § 1983 claims raising constitutional challenges relating to an ongoing state proceeding. *See Doby v. Strength*, 758 F.2d 1405, 1405–06 (11th Cir. 1985).

To the extent that Sundy sought a declaratory judgment stating, among other things, that the manner in which the state court accepted his pleadings was unconstitutional, those orders were "uniquely in furtherance of the state court['s] ability to perform [its] *judicial* function[]." *See Green*, 563 F.3d at 1251 (quotation omitted). Furthermore, each of the *Younger* abstention factors has been satisfied here—the state-court proceedings were ongoing and implicated an important state interest, and Sundy failed to offer any evidence to overcome the presumption that the state processes can provide an adequate remedy, especially where he has filed appeals and writs of mandamus in the Georgia Court of Appeals and Georgia Supreme Court. Accordingly, the district court did not abuse its discretion by dismissing Sundy's claims against Carr and the clerk defendants based on the *Younger* abstention doctrine.

**B**

Under Federal Rule of Civil Procedure 15(a), "a district court 'should freely give leave' to amend a complaint 'when justice so requires.'"  *Chang*, 845 F.3d at 1094 (quoting Fed. R. Civ. P. 15(a)(2)).  But importantly, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile, such as when the complaint as amended is still subject to dismissal because, for example, it fails to state a claim for relief."  *Id.* (quotation omitted).

Here, an amended complaint would have been futile because further allegations of similar activity—*i.e.*, assertions that his constitutional rights were violated, whether in conjunction with a conspiracy to remove papers and hold secret hearings or otherwise—would have been equally subject to dismissal under the *Younger* doctrine.  Therefore, the district court did not err in refusing to allow Sundy leave to amend his complaint.

**II**

Second, Sundy asserts that the district court erred (a) by dismissing his claim against Friendship as nonjusticiable, and (b) by granting Friendship's motion to set aside entry of default.[5]

---

[5] We review questions of subject-matter jurisdiction *de novo*.  *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1242 (11th Cir. 2007).  We review a district court's ruling on a motion

## A

"Any time doubt arises as to the existence of federal jurisdiction, we are obliged to address the issue before proceeding further." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995).  In all cases asserting claims under the Declaratory Judgment Act—such as this one—"the threshold question is whether a justiciable controversy exists." *Id.*  "Congress limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete 'cases or controversies.'" *Id.*

"The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Id.* (quotation omitted).  The Supreme Court has explained that "[t]he requirement of [an] actual injury redressable by the court, serves several of the implicit policies embodied in Article III." *Valley Forge Christian Coll. v. Ams. United for Separation of Church &*

---

to set aside an entry of default for abuse of discretion. *See Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 950 (11th Cir. 1996).

*State*, 454 U.S. 464, 472 (1982) (citation and quotations omitted).  "It tends to assure that the legal questions presented to the court will be resolved . . . in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  *Id.*

Here, even if the district court gave Sundy precisely what he asked for—a declaratory judgment stating that Friendship submitted a false affidavit with the Georgia Department of Transportation—that relief, alone, could not actually redress his alleged harm (deprivation of property) or completely resolve this case. Instead, it would only resolve a collateral issue; he would still have to return to state court, where he might (or might not) be able to use the declaratory judgment in support of a new suit seeking monetary damages.  *Cf. Calderon v. Ashmus*, 523 U.S. 740, 746–47 (1998) (holding that a litigant's request under the Declaratory Judgment Act for what is in effect "an advance ruling" on a collateral issue—rather than a "conclusive determination" of the underlying controversy—does not constitute an Article III "case or controversy").  Therefore, Sundry's alleged injury was not likely to be redressed by a favorable court disposition, and the district court did not err in dismissing the claims against the Friendship defendants as nonjusticiable.

9

**B**

"[W]e have a strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014). We have explained that Federal Rule of Civil Procedure 55(a) "mandates the entry of default so that the adversary process [will not be] halted because of an essentially unresponsive party." *Id.* at 1337 (alteration in original) (quotation omitted). "[A] motion for relief under Rule 55(c) . . . is appropriate . . . even when there has not been a formal entry of default . . . ." *Id.* (alteration adopted) (quotation omitted). "The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c); *Perez*, 774 F.3d at 1337–38. "Good cause" is a flexible, "mutable standard." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (quotation omitted). To determine what constitutes good cause, courts have considered, but are not limited to, factors such as the willfulness of the default, "whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Id.* (addressing the denial of a Rule 55(c) motion). "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying

10

circumstances which warrant the finding of 'good cause' to set aside a default."

*Id.* (quotation omitted).

Here, Friendship had a meritorious defense—*i.e.*, that the case was nonjusticiable. Given that fact, and the other attendant circumstances, the district court did not abuse its discretion by setting aside the entry of default.

### III

Finally, Sundy contends that the removal of documents from the district court's docket, a delay in fixing clerical mistakes, and a "secret" *ex parte* hearing by the court to find the missing documents violated his constitutional rights.[6]

"A district court must be able to exercise its managerial power to maintain control over its docket." *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004). "This power is necessary for the court to administer effective justice and prevent congestion." *Id.* The former Fifth Circuit explained that "court resources and capacities are finite," and so, "within proper limits, judges must be permitted to bring management power to bear upon massive and complex litigation to prevent it from monopolizing the services of the court to the exclusion of other

---

[6] "We review a district court's decision made in the course of managing its docket for an abuse of discretion." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1320 (11th Cir. 2013). "The district court has a range of options; and so long as the district court does not commit a clear error in judgment, we will affirm the district court's decision." *Young v. City of Palm Bay*, 358 F.3d 859, 863 (11th Cir. 2004).

11

litigants." *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977).

Here, the district court did not abuse its discretion when it corrected the docketing errors to which Sundy objected. Likewise, given the complexity of the litigation, involving numerous parties and filings, the court did not take an unreasonably long time to rule on the motions to dismiss, which fully disposed of the case and made discovery unnecessary. Finally, the district court did not hold a secret, *ex parte* meeting by speaking with the court clerks about allegedly missing documents without Sundy present, and Sundy's decision not to appear at the motions hearing, despite clearly being aware of it, did not make it an unlawful *ex parte* hearing. Accordingly, Sundy failed to show any actual harm or abuse of discretion by the district court in this respect.

**AFFIRMED IN PART AND DISMISSED IN PART.**