**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11592

Non-Argument Calendar

_____

KENNETH R. PARSON, JR.,

*Plaintiff-Appellant,*

*versus*

ANN COFFIN,

in her individual capacity,

*Defendant-Appellee.*

_____

Appeal from the United States District Court

for the Middle District of Florida

D.C. Docket No. 8:25-cv-00268-LSG

_____

Before JILL PRYOR, BRANCH, LAGOA, Circuit Judges.

PER CURIAM:

Kenneth Parsons, Jr. appeals pro se from the magistrate judge's grant of a motion to dismiss without leave to amend his

2                    Opinion of the Court                    25-11592

amended complaint alleging violations of his due process rights under 42 U.S.C. § 1983.[1]  On appeal, Parsons argues that the magistrate judge erred in dismissing his claims because his complaint alleged that his driver's license is a property right which Ann Coffin, the Director of the Florida Department of Revenue Child Support Program, took without notice or a hearing in violation of clearly established law.  Parsons further argues that Coffin was not entitled to qualified immunity.  Parsons also argues that the magistrate judge abused her discretion in denying him leave to amend because he was entitled to an opportunity to amend in response to Coffin's motion to dismiss.  After careful review, we affirm the dismissal without leave to amend.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2024, the Florida Department of Revenue ("DOR") Child Support Program sent Kenneth Parsons a "Notice of Intent to Suspend Driver License and Motor Vehicle Registrations for Failure to Submit to Genetic Testing."[2]  The notice stated

---

[1] The parties below consented to the magistrate judge's authority.

[2] Florida law authorizes the DOR to initiate administrative paternity proceedings.  Fla. Stat. § 409.256(2).  To begin a paternity proceeding, the DOR must send notice to the respondent which may include an order for genetic testing.  *Id*. §§ 409.256(4)(a)(11), 409.256(4)(c)(9).  If the respondent does not submit to genetic testing, the DOR may start proceedings to suspend his license, pursuant to Fla. Stat. § 61.13016.  *Id*. § 409.256(7)(a).  Section 61.13016, in turn, authorizes the DOR to enforce a genetic testing order by "provid[ing] notice to the obligor of the delinquency or failure to comply" which must describe the person's right "to file a petition in circuit court to contest the delinquency action."  *Id*. § 61.13016(1)(c).  When the Department

that "The Child Support Program may ask the Department of Highway and Safety and Motor Vehicles" to suspend Parson's driver's license and registration because he failed to "compl[y] with the Order to Appear for Genetic Testing" served on June 13, 2024. The notice gave Parsons twenty days to either contact the Child Support Program to schedule a genetic test appointment or to "[c]ontest this action by filing a petition in circuit court." The genetic testing order occurred as part of an administrative action against Parsons to establish paternity in a pending child support case. Parsons contested that action.

On January 27, 2025, the Florida Department of Highway Safety and Motor Vehicles ("FLHSVM") notified Parsons that his driver's license and vehicle registration would be suspended as of February 17, 2025, "for failure to comply with an order for child support, alimony or genetic testing per section 322.058 and 322.245, Florida Statues." The notice explained to Parsons how to "clear" the issue and avoid suspension. The notice also explained that, if Parsons believes he had "any basis to show why [the suspension] is incorrect," he could request a hearing "to present evidence per section 322.271, Florida Statutes."

---

of Highway Safety and Motor Vehicles receives notice that a person has a delinquent obligation, it must suspend his driver's license and car registration. *Id.* § 322.058. Florida law requires certain procedures for different types of administrative proceedings. *See* Fla. Stat. §§ 120.57, 120.569.

Parsons filed his first pro se complaint on February 3, 2025. One month later, Parsons filed an amended pro se complaint—the operative complaint here—alleging that Coffin violated his due process rights by suspending his driver's license and car registration without notice, a hearing, legal justification, or judicial authorization and that suspension was outside of her jurisdiction as an executive official.  Although none of the notices Parsons received indicated they were from Coffin or bore her signature, Parsons alleged that Coffin is responsible for his license suspension because, as Director, she initiated the process to suspend his license.  This action, he says, is an ultra vires act because Florida law requires compliance with judicial due-process protections before a license may be suspended.  Parsons next alleged that Coffin could not rely on vague statutory interpretations to justify enforcement actions that violate constitutional rights, and Coffin's actions were First Amendment retaliation because Parsons's license was suspended after he contested her jurisdiction over him.  Parsons requested damages and declaratory and injunctive relief.

Coffin filed a motion to dismiss Parson's amended complaint, arguing that she was entitled to qualified immunity and that he failed to state a claim because he did not provide factual or legal support that Coffin violated his rights.

On March 31, 2025, Parsons opposed, arguing that Coffin was not entitled to qualified immunity and that his claim was well-pleaded because he alleged Coffin violated his due process rights and he was entitled to declaratory and injunctive relief because a

threat of fraudulent claims against him remained.  A week later, in a second motion in opposition, Parsons argued that he plausibly alleged First Amendment retaliation because Coffin opened a child support case after Parsons filed his complaint and Coffin lacked personal and subject matter jurisdiction.

The magistrate judge found Parsons's amended complaint made frivolous allegations because Florida law authorizes Coffin to suspend a license without a court order and to initiate an administrative paternity proceeding by serving the respondent with a notice that explains the choice to file an action in circuit court, to order genetic testing in the paternity proceeding notice, and to enforce the order for genetic testing by suspending the respondent's license and registration.  Applying *Mathews v. Eldridge*, 424 U.S. 319 (1976), the magistrate judge determined that Parsons failed to allege a due process violation because he had pre-suspension notice that explained how he could obtain a hearing or contest DOR's action.  Even if Parsons stated a claim, the magistrate judge concluded that Coffin was entitled to qualified immunity because she acted within her discretionary authority and Florida law did not establish a right to a court order before license suspension.  Parsons timely appealed.

## II. STANDARD OF REVIEW

We review *de novo* a district court's order granting a motion to dismiss for failure to state a claim, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff."  *Hunt v. Aimco Properties, L.P.*, 814 F.3d

1213, 1221 (11th Cir. 2016).  We review *de novo* dismissal for failure to state a claim based on qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

We review denials of leave to amend a complaint for an abuse of discretion, although we review *de novo* the underlying legal conclusion of whether a particular amendment to the complaint would be futile.  *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1093–94 (11th Cir. 2017).

### III. ANALYSIS

On appeal, Parsons raises two issues.  First Parsons challenges the dismissal of his section 1983 claim for failure to state a claim.  Second, Parsons maintains that the district court, upon dismissing that claim, abused its discretion by denying him leave to amend his complaint.  We address each issue in turn.

### A.  Failure to State a Claim

We consider whether the magistrate judge erred in concluding that Parson's amended complaint failed to plausibly allege a violation of his due process rights under the Fourteenth Amendment and section 1983 and that Coffin is entitled to qualified immunity.

### i.  Due Process Claim

To survive a motion to dismiss, the complaint must plead enough facts to state a claim for relief that is plausible on its face. *Hunt*, 814 F.3d at 1221.  A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

To state a claim under section 1983, a plaintiff must allege that a person acting under color of state law committed an act that deprived him of some right protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. The elements of a section 1983 claim alleging denial of procedural due process are (1) deprivation of a constitutionally protected liberty or property interest, (2) state action, and (3) constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

Here, the alleged Constitutional violation was Parsons's procedural due process rights. "[A]t a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty, or property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

To determine if the procedures used to deprive a liberty or property interest are constitutionally adequate, we must apply the balancing test set forth in *Mathews v. Eldridge*. Specifically, courts look at (1) the private property or liberty interest that will be affected by the official action, (2) the risk that the procedures used will cause an erroneous deprivation of such interest, and the

probable value of additional procedural safeguards, and (3) the government's interest, including the administrative burdens that any additional procedural safeguards would entail. *See Mathews*, 424 U.S. at 335.

The deprivation of a driver's license by the state implicates the Due Process Clause. *See Dixon v. Love*, 431 U.S. 105, 112 (1977). In *Dixon*, the Court first applied the *Mathews* test to determine whether an Illinois law that permitted the state to revoke drivers' licenses without a preliminary hearing was constitutionally adequate. *Dixon*, 431 U.S. at 112–15. In analyzing the private interest involved, the Court noted that while citizens have a property interest in their licenses, such an interest was not "vital and essential," nor was it "so great as to require us to depart from the ordinary principle . . . that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Id.* at 113. Second, the Court held that the risk of erroneous deprivation in the absence of a preliminary hearing was not great, because suspension decisions were "automatic" and involved little discretion, and that additional procedural safeguards were unnecessary. *Id.* at 113–14. Finally, the Court held that the government interest in administrative efficiency would be obstructed by requiring preliminary hearings in every case, and that there was a significant public interest in keeping the roads safe and free of those "unable or unwilling to respect traffic rules." *Id.* at 114–15.

25-11592                Opinion of the Court                9

On that background, Parsons has not plead sufficient facts to draw the reasonable inference that Coffin denied him constitutionally adequate process.

First, Parsons did not plausibly allege that Coffin took any action to suspend his license, nor do his exhibits demonstrate that she signed off on his suspension. *See Griffin Indus., Inc.*, 496 F.3d at 1206. Second, even if Coffin did act, Parsons did not allege that Coffin failed to provide him with pre-deprivation notice and hearing. The exhibits attached to his complaint demonstrate that the DOR sent him a notice of its intent to suspend his license and registration, that he could have filed a petition in circuit court to contest the child support order before his license was suspended, and that he could have requested a hearing to contest his suspension. Such opportunities to be heard satisfy the minimum due process required because they provide more than the post-deprivation hearing the Supreme Court determined was adequate for license suspension. *See Grayden*, 345 F.3d at 1232; *Dixon*, 431 U.S. at 113. Nor is there a substantial risk of erroneous deprivation because suspension came only after Parsons failed to comply with the DOR's order and the DOR provided an opportunity to contest suspension. *Dixon*, 431 U.S. at 113-14. Finally, ensuring individuals comply with their legal obligations to participate in paternity proceedings is a significant interest for the government to protect. *Id.* at 114.

### ii.  Qualified Immunity

Even if Parsons could state a claim under section 1983, such a claim is barred because Coffin is entitled to qualified immunity.

A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery. *Cottone*, 326 F.3d at 1357.  Once the affirmative defense of qualified immunity has been advanced, the defendant is entitled to dismissal unless the plaintiff alleged a violation of clearly established law. *Id.*  Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.*  To receive qualified immunity, the official must show that he was acting within his discretionary authority. *Id.*  Once that showing is made, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.* at 1358.

Coffin, as director of the DOR Child Support Program, would have been acting within her discretion by initiating Parton's license and registration suspension. *See* Fla. Stat. §§ 409.256(2), 409.256(4)(a)(11), 409.256(4)(c)(9), 409.256(7)(a), 61.13016(1)(c). Moreover, Coffin would not have violated Parson's due process or statutory rights because he received notice and the opportunity for a hearing before the suspension. *Grayden*, 345 F.3d at 1232; Fla. Stat. §§ 409.256(7)(a), 61.13016(1)(c).

We thus conclude that the magistrate judge did not err in dismissing Parsons's complaint for failure to state a claim.

## B. Dismissal Without Leave to Amend

Having determined that the magistrate judge properly dismissed Parson's section 1983 claim, we next consider whether the court abused its discretion by denying Parsons leave to amend his complaint. Generally, before the district court dismisses an action with prejudice, a pro se plaintiff must be given at least one chance to amend the complaint where a more carefully drafted complaint might state a claim. *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1254 (11th Cir. 2017), *abrogated on other grounds by Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644 (2020). But a district court need not allow amendment where amendment would be futile. *Id.* An amendment would be futile if the amended complaint would still be properly dismissed. *Id.*

Here, the magistrate judge's dismissal of Parsons's complaint without leave to amend was not an abuse of discretion because any amendment would be futile, as Coffin was entitled to qualified immunity. Accordingly, we affirm the magistrate judge's dismissal of Parsons's claim without leave to amend.

**AFFIRMED.**